**W. G. CORNELL COMPANY OF WASH-
INGTON, D. C., INC.**

v.

**The UNITED STATES.**

No. 245–63.

United States Court of Claims.
April 14, 1967.

Henry F. Lerch, Washington, D. C., attorney of record, for plaintiff; Robert L. Pillote and Wallace, Lerch & Pillote, Washington, D. C., of counsel.

Ray Goddard, Washington, D. C., with whom was Asst. Atty. Gen. Barefoot Sanders, for defendant.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON and NICHOLS, Judges.

## OPINION

### PER CURIAM.

This case was referred to Trial Commissioner Franklin M. Stone with directions to make findings of fact and recommendation for conclusions of law. The commissioner has done so in a report and opinion filed on June 30, 1966, in which the facts are stated in the opinion. Defendant has filed exceptions to the commissioner's report and opinion and the case has been submitted to the court on defendant's brief and oral argument of counsel. Since the court is in agreement with the opinion, findings and recommendation of the commissioner, with modifications, it hereby adopts the same, as modified, as the basis for its judgment in this case, as hereinafter set forth. Plaintiff is therefore entitled to recover under the "Changes" clause of the contract for any additional expenses it incurred in installing board (rigid) type insulation on all concealed air conditioning ducts rather than blanket (flexible) insulation material. The determination of the amount of recovery is reserved for proceedings under Rule 47 (c), which proceedings herein shall be, and hereby are, suspended for a period of six months from the date hereof for the purpose of allowing plaintiff time to institute appropriate administrative proceedings, and to afford the Armed Services Board of Contract Appeals an opportunity to consider the issue of damages. Plaintiff shall, on or before the last day of the above-specified suspension period, submit a report to the court setting forth the result of the administrative proceedings below and the then current status of this case.

### OPINION OF COMMISSIONER *

STONE, Commissioner:

On May 31, 1960, plaintiff was awarded a contract (No. DA–49–080–Eng–4936) for construction of additional air conditioning facilities at the DeWitt Army Hospital, Fort Belvoir, Virginia. Plaintiff asserts a claim in this action on behalf of its insulation subcontractor, General Insulation Company, Inc., Washington, D. C., for an equitable adjustment in the amount of approximately $3,000.

Plaintiff's claim arises from the alleged wrongful refusal of the contracting officer to approve, for use in the insulation of supply and return ducts, not exposed within air conditioning spaces, blanket (flexible) material submitted by the contractor and represented to be equally suitable material to the block or board (rigid) type of insulation named in certain specifications, which were incorporated in the technical provisions of the contract by reference. Following the aforestated action of the contracting officer, plaintiff installed the more costly board type insulation on the ducts in question. Thereafter, plaintiff filed a claim for additional compensation which was denied by the contracting officer on January 24, 1961. Plaintiff appealed to the Corps of Engineers Board of Contract Appeals (hereinafter referred to as the "Engineers Board") which, following a hearing, issued a decision on March 7, 1962 (Eng BCA No. 1946), sustaining the decision of the contracting officer. Plaintiff filed a motion for reconsideration and the Engineers Board, by order dated June 29, 1962, affirmed its initial decision. Thereafter, plaintiff appealed to the Armed Services Board of Contract Appeals (hereinafter sometimes referred to as the "ASBCA" or the "Board") which rendered a decision on May 8, 1963, adverse to plaintiff and disallowed its claim. Plaintiff filed a motion for reconsideration of said decision which the Board denied on July 30, 1963.

---

* The opinion and recommended conclusion of law are submitted pursuant to order of the court under Rule 57(a). The facts are stated in the opinion.

Plaintiff filed its petition herein on August 29, 1963.

█ The case is here on an Assignment of Errors filed by plaintiff attacking the administrative decisions of both the Engineers Board and the ASBCA as being arbitrary, capricious, and erroneous as a matter of law. A responding statement was filed by defendant to which plaintiff submitted a reply. The record in the instant case consists solely of the record of the administrative proceedings below, as supplemented to the extent indicated infra.[1] The sole issue presented to the court is the question of liability.[2]

The administrative decisions questioned by plaintiff, as will be more fully shown hereinafter, turned on an interpretation of the contract specifications. Therefore, it is essential to look to the contract and specifications to see what they provide.[3] Thereafter, the scope of the review with respect to the determinations made by the administrative boards and the key contentions will be considered.

The section containing the technical provisions of the contract which are relevant to the controversy between the parties reads as follows:

## PART III

### SECTION 25

*Air-Conditioning System and Appurtenances*

\* \* \* \* \* \* \* \* \* \*

25–02. APPLICABLE PUBLICATIONS: \* \* \*

a. *Federal specifications:*

\* \* \* \* \* \* \* \* \* \*

HH–I–562. Insulation, Thermal, Mineral Wool, Block or Board and Pipe Insulation (Molded Type).

1. During the course of pretrial proceedings, the administrative record was received in evidence and plaintiff indicated a desire to supplement said record by introducing two other items of documentary material. After considerable discussion, the commissioner ruled that plaintiff was not entitled to introduce de novo evidence and that the court would limit its review to the administrative record. Both parties agreed to this ruling. Under the rationale of Morrison-Knudsen Company v. United States, 345 F.2d 833, 170 Ct.Cl. 757 (1965), where complete administrative relief is available to a contractor under a Government contract, the contractor is not entitled to a trial de novo on the factual questions decided administratively. See also Gholson, Byars & Holmes Constr. Co. v. United States, 351 F.2d 987, 173 Ct.Cl. 374 (1965). However, the parties subsequently filed a stipulation, approved by the commissioner, wherein it was agreed that two of plaintiff's exhibits (identified and described in the proceedings below as follows—"Exhibit #24: Job specifications for Technical Training Bldg., Andrews Air Force Base, Md.; identifying number Eng 49–080–57–9" and "Exhibit #25: Job specifications for East Coast Relay Station, Ft. Dietrich, Md.; identifying number DA–49–080–Eng–3593"), which were received in evidence without objection at the original hearing before the Engineers Board and considered by both that Board and the ASBCA, had become lost or misplaced; that those exhibits properly should have been included in the administrative record; and that the court might consider all testimony concerning said exhibits as if they were physically present in the administrative record. Under the foregoing facts and circumstances, the above-identified exhibits were deemed to be a part of the administrative record before the court and testimony in said record relating to the exhibits was considered in reaching the result expressed in this opinion.

2. The parties agreed that no proof of damages was before the ASBCA and that if the court should hold in favor of the plaintiff, the amount of recovery should be determined in further proceedings under Rule 47(c). See footnote 7.

3. Only those provisions of the contract as cited by the parties are considered in this opinion. While the record does not clearly show the fact, it may be reasonably assumed that the contract contained the standard "disputes" clause.

\*　\*　\*　\*　\*　\*　\*　\*　\*　\*

25–04. MATERIALS AND EQUIPMENT: The following materials and equipment shall conform to the respective specifications and other requirements specified below:

\*　\*　\*　\*　\*　\*　\*　\*　\*　\*

n. *Mineral-wool insulation*: Federal Specification HH–I–562, type I, class 2, for ducts; type II, class suitable for temperature application, for pipes.

\*　\*　\*　\*　\*　\*　\*　\*　\*　\*

25–32. INSULATION: \* \* \*

\*　\*　\*　\*　\*　\*　\*　\*　\*　\*

e. *Ducts:* Supply and return ducts that are not exposed within air-conditioning spaces shall be insulated with not less than 1-inch thickness of impregnated mineral wool, thermally equivalent thickness of glass insulation, *or other equally suitable material approved by the Contracting Officer.* The insulating material shall be set in a waterproof adhesive and coated with suitable water-repellant cementing substance that will provide an effective vapor barrier. An approved vapor-barrier envelope may be furnished, if standard with the manufacturer of the insulation and suitable for the finish coating. Insulation exposed within equipment rooms or other spaces where it may be subject to damage shall be protected by means of a finish coating of suitable plaster not less than ¼-inch in thickness, applied in a manner recommended by the manufacturer of the insulation and approved by the Contracting Officer. \* \* \* [Emphasis supplied.].

Excerpts from Federal Specification HH–I–562, mentioned in section 25–02(a), above, and which was incorporated in the contract by reference, pertinent to the contentions of the parties in this suit, are quoted below:

1.2.2 *Types and classes.* The mineral wool insulation shall be of the following types and classes, as specified.

\*　\*　\*　\*　\*　\*　\*　\*　\*　\*

3. REQUIREMENTS

\*　\*　\*　\*　\*　\*　\*　\*　\*　\*

3.6. Type I, block or board.
3.6.1 *Construction.—Block or board insulation shall be* composed of mineral wool fibers with water-resistant binder added, *formal into rigid, flat, rectangular units.* It may have a waterproofing treatment either integral or as an outside sheath in lieu of water-resistant binder. [Emphasis supplied.]

\*　\*　\*　\*　\*　\*　\*　\*　\*　\*

3.6.5 *Compressive strength.—*When tested as specified in 4.3.6, the deformation under the loads noted in table II shall not exceed the values shown in that table.

TABLE II.—*Compressive strength of block or board*

| Class | Maximum deformation as percent or original thickness |
|---|---|
| 1—Load bearing .......... | 2 percent at 500 pounds per sq. ft. load. |
| 2—Non-load bearing ....... | 10 percent at 500 pounds per sq. ft. load. |

It is apparent from examination of sections 3.6 and 3.6.1 of the above Federal Specification that the contract specified block or board type insulation for concealed ducts. Plaintiff does not dispute this fact, but it alleges, on behalf of itself and its said subcontractor, that in the preparation of its bid, all concealed duct insulation was estimated on the basis of using blanket type insulation, and that such estimate was justified by reason of an established trade usage permitting the use of blanket insulation in the performance of contracts such as the one involved here. Plaintiff attempts to fortify the aforestated position by pointing to the language of the technical provisions of the contract (section 25–32(e), supra), which allow the use of "other equally suitable [insulation] material."

The facts essential to a decision are not in serious dispute and for our purposes here, the evidence established by the testimony presented to the Engineers Board is adequately summarized in that Board's opinion and decision of March 7, 1962. It appears therefrom that about 1951, when a satisfactory fiber glass blanket material appeared on the market, contractors throughout the country generally began offering the use of blanket type insulation on non-exposed ducts during the course of performing Government construction contracts covering work similar to that required under the contract involved in the instant case. This was done for each job by the contractor requesting approval of the Government for a substitution of materials on the ground that the blanket insulation was superior, rather than by attempting to show compliance with the appropriate federal specification designating block or board type insulation. The evidence before the Engineers Board disclosed that the Corps of Engineers entered into a number of construction contracts which contained a provision identical, or substantially similar, to section 25–32e of the Technical Provisions, supra, and incorporated by reference Federal Specification HH–I–562, supra. Many of these contracts were administered by the Washington District Office of the Corps of Engineers involved in this appeal, and some even by the same area office under said District. Testimony was presented that in all instances the blanket insulation was accepted by the Corps of Engineers without any negotiation of a credit to the Government.

In connection with the foregoing, it is considered significant to note that the record shows plaintiff's subcontractor, i. e., the General Insulation Company, had performed the insulation work on approximately twelve prior contracts in which blanket insulation had always been approved and accepted by the same Corps of Engineers District Office involved in this appeal.

As part of a routine submittal of materials for approval in connection with performance of the contract, plaintiff indicated its intention to apply blanket type insulation to concealed ducts in accordance with the alleged established trade custom and practice. As mentioned hereinbefore, this submittal was disapproved by the contracting officer on the grounds that the proposed material did not comply with the contract specifications. Subsequently, under protest, the plaintiff submitted, had approved, and

installed board type insulation in non-exposed areas.

The grounds upon which the contracting officer rejected plaintiff's contention that the specifications could be interpreted to permit the use of blanket insulation, especially in view of the fact that such material had been consistently and regularly accepted in the past, are apparent from the following portion of the contracting officer's decision of January 24, 1961:

> I find further that your allegation that it has been the accepted custom and practice of this office and other Corps of Engineer Districts to accept blanket type insulation as being in accordance with the specifications for work performed under contracts having similar or identical provisions as this is irrelevant and cannot be considered in interpreting the type of insulation required under these specifications. Custom and usage may only be examined to ascertain the meaning of ambiguous language and to imply items which are not actually expressed in the contract document; * * *. Neither of these conditions is present here * * *.

In denying plaintiff's appeal from the contracting officer's denial of plaintiff's claim for additional compensation for being required to cover non-exposed ducts with board type insulation material, the Engineers Board stated in its decision of March 7, 1962:

> We are persuaded, and we find, that the blanket insulation * * * does not comply with the requirements of Federal Specification HH–I–562. We cannot hold that insulation which has the pliability of a sponge is rigid by any common sense definition * * *. The record indicates that the blanket insulation is regularly referred to as flexible in the trade.
>
> * * * * * *
>
> That blanket insulation may give as good a, or even a better, job from the standpoint of insulating qualities and cost as board insulation meeting Federal Specification HH–I–562 is possible, but it is not material to the dispute under consideration.

Having found that the blanket insulation does not meet the applicable Federal Specification incorporated into the contract by reference, does a provision of the contract itself allow such use? We think not. The only language which might be considered to support such a view is that found in TP 25–32e whereby "other equally suitable material [may be] approved by the Contracting Officer." Even could that phrase be construed to permit the Contracting Officer to accept blanket material (which we do not hold), the question never arises, since every action taken by the Contracting Officer and his representatives after award of this contract belies approval and is to the effect that the Contracting Officer clearly refused to approve of blanket material.

The appellant has ·proved to our satisfaction, and we find, that some employees of the Washington District had regularly allowed installation of blanket insulation for non-exposed ducts, notwithstanding the reference in the contracts to Federal Specification HH–I–562 and the fact that some other District personnel did not consider that such material complied with that specification. We further are convinced, and find, that this practice has been sufficiently widespread and long standing that subcontractors in the area preparing bids for insulation work to be submitted to general contractors bidding jobs in that District have based their computations on using blanket insulation in spite of the presence in the contract by reference of Federal Specification HH–I–562. There is no evidence in the record of any past course of dealing between the prime contractor making this appeal and the Government which would indicate whether it had ever used blanket insulation in performing a contract in which the cited Federal Specification was governing.

Where a contract's meaning is unclear, resort may be had to various aids to determine what the parties intended it to say. Among these are usage or custom and apparent prior interpretation by the parties in similar circumstances. * * *

We have already held that the language of the Federal Specification under which the Government rejected the blanket material was clear and could leave no reasonable doubt that such material did not comply with the specification. Though there are some decisions to the contrary, the weight of, and we think better, authority holds that where contract language is clear and unambiguous on its face, it is not proper to resort to extrinsic evidence to vary or contradict that language. * * * This has been held by appellate boards and the Court of Claims in instances where an attempt was made to vary clear contract terms by showing trade customs. * * * And it has similarly been held where the effort was to vary the contract by showing instances of past practice between the parties. * * *

Where there is a failure to comply with the clear provisions of a contract, we do not believe that the present state of contract law is such that we may overlook the same, even though through mistake or inadvertence or otherwise representatives of the Government may in other instances have done so.

The opinion and decision of the ASBCA rendered on May 8, 1963, denying plaintiff's appeal from the Engineers Board decision of March 7, 1962, reads in pertinent part:

The Board below found that at least in the respects that the blanket type insulation proposed did not come in rigid, flat and rectangular units, it did not meet the requirements of the Federal Specification. On its holding that the meaning of the specification was clear it found unavailing to the appellant any "usage or custom and appar-

ent prior interpretation by the parties in similar circumstances."

The ASBCA concurred in and affirmed the findings of the Engineers Board that employees of the Washington District regularly approved the installation of blanket insulation and that this practice was so widespread and long standing that subcontractors in the area based their bids on using blanket material. However, the Board went on to say in its said opinion:

It is not material in this case, as claimed by the appellant, that the blanket insulation in the concealed areas served the needs of the Government as well or better than the board type.

* * * * * *

* * * However strong the evidence of custom and usage might otherwise be it is only available to resolve doubtful language.

* * * * * *

There is no question of the acceptance by some representatives of the Corps of Engineers for a long period of time, of this blanket insulation for the use proposed here. The record does not show why the Corps acted so. * * *

There is no showing that Area or Resident Engineers or Contracting Officers ever approved blanket insulation and it has been assumed that approval was given by inspectors in the field or Architect-Engineers. And it is here to be noted * * * that there was no course of dealing in this respect between the Corps of Engineers and this appellant. In these circumstances we cannot find the elements of estoppel, as the appellant suggests, independent of, and distinguished from the interpretive principle of custom and usage. * * *

Plaintiff contends that the only issues presented for resolution in this court are questions of law. In this vein, plaintiff asserts that the consistent approval of blanket type insulation for use on concealed ducts over a substantial period of time was justified by section 25–32e, supra, of the contract which permitted

the use of "other equally suitable material." In essence, plaintiff says that there was sufficient ambiguity in the contract to permit consideration of trade usage, which it alleges, is now binding on both parties. Plaintiff argues, alternatively, that assuming the specifications are clear and unambiguous, the Government has acquiesced in the interpretation given the job specifications by the trade and, therefore, it is estopped from taking any action which is inconsistent with the established practice.

Defendant responds that only questions of fact are presented for determination and, accordingly, this court may not substitute its opinion for those of the administrative tribunals below. Specifically, defendant states that the findings of the Boards with respect to plaintiff's contentions were factual in nature and reached after two adversary hearings at which plaintiff offered testimony and evidence in support of its claim, and that in a case such as this, where both parties agreed that the controversy was within the competence of the administrative agency, "it is fundamental that the function of the Court under these circumstances is, simply, to determine whether the Board's adjudication meets the substantial evidence test laid down by the Wunderlich Act, 41 U.S.C. 321." Defendant further asserts that plaintiff's evidence before the administrative boards did not establish that a trade usage existed, and in any event, the trade usage was not known to the Government. Defendant then argues that one cannot resort to evidence of trade usage to vary or contradict the clear and unambiguous language of a contract. Finally, defendant advances the contention that since there were no prior dealings between the instant litigants, the principle of estoppel is inapplicable.

It is apparent from the foregoing that there are several questions in this case, the threshold one being whether the decision rendered by the ASBCA on May 8, 1963, with respect to plaintiff's claim, is entitled to finality under the standards set forth in the Wunderlich Act, 68 Stat. 81, 41 U.S.C. §§ 321–322 (1964), or whether this court may exercise independent judgment in the instant case in reviewing the conclusions reached by that Board.[4]

■■■ As the Supreme Court held in United States v. Carlo Bianchi & Co., 373 U.S. 709, 83 S.Ct. 1409, 10 L.Ed.2d 652 (1963), this court, when considering factual questions within the scope of the disputes clause of standard Government construction contracts, is restricted to a review of the administrative record under the standards contained in the Wunderlich Act, supra. The act immunizes from judicial correction the ultimate administrative determination of

---

4. Although plaintiff attacks the decisions of both the Engineers Board and the ASBCA, it should be kept in mind that the latter Board, in its opinion and decision of May 8, 1963, denying plaintiff's appeal from the decision of the Engineers Board rendered March 7, 1962, concurred in and affirmed the findings and conclusions of the Engineers Board, and rendered the final administrative decision with respect to plaintiff's claim. Therefore, it is the decision of the ASBCA that is being tested in this review. However, while the ASBCA, to some extent, elaborated upon and supplemented the Engineers Board's decision, it (the ASBCA) necessarily referred directly, or by implication, to certain portions thereof as a predicate for its discussion and decision. Accordingly, in reviewing the ASBCA's decision, it is essential that the opinion in the instant case include specific references to the Engineers Board's decision in order that the reasoning underlying the decision of the ASBCA may be properly evaluated. It is emphasized that the decision of the ASBCA was based, in essential respects on findings and conclusions which were initially made by the Engineers Board and adopted by the ASBCA. Therefore, findings and conclusions attributed to the ASBCA encompass, among others, those contained in the decision of the Engineers Board. In view of the foregoing, unless otherwise specifically stated, references to the "Board" mean the ASBCA rather than to the Engineers Board, but such reference includes the collective findings, conclusions and decisions of both Boards.

such a factual dispute, unless the decision therein is "fraudulent or capricious or arbitrary or so grossly erroneous as necessarily to imply bad faith, or is not supported by substantial evidence." However, under the second section of the act, i. e., 41 U.S.C. § 322, administrative decisions on a question of law are not final and conclusive, even though they may comply with all the criteria specified in the first section thereof. T. F. Scholes, Inc. v. United States, 357 F.2d 963, 174 Ct.Cl. 1215 (1966); C. J. Langenfelder & Son, Inc. v. United States, 341 F.2d 600, 607, 169 Ct.Cl. 465, 477, 480 (1965); Blount Bros. Constr. Co. v. United States, 346 F.2d 962, 964, 171 Ct.Cl. 478 (1965).

The dispute here turns on whether the contract required the installation of rigid type insulation on non-exposed ducts, or stated conversely, did the contract permit the use of "equally suitable" insulation thereon? Defendant maintains that whether or not material furnished under the contract complied with the specifications is a question of fact, citing as authority American Marine Upholstery Co. v. United States, 345 F.2d 577, 582, 170 Ct.Cl. 564, 573 (1965). In my opinion, under the circumstances of this case, defendant's view is erroneous and American Marine Upholstery Co. v. United States, supra, is clearly distinguishable.

■ The fallibility of defendant's argument is that it does not recognize that "[t]he fundamental issue is the basic nature of the controversy." Kaiser Industries Corp. v. United States, 340 F.2d 322, 334, 169 Ct.Cl. 310, 330 (1965). Under the contract in this suit and the Wunderlich statute, the determination that the flexible insulation did not, in fact, comply with the specifications was the unquestioned right of the contracting officer or his representative. The decisions of this court, however, are uniform in holding that if this factual determination is dependent upon the proper construction of the contract specifications, "then what is ultimately involved is a question of law." Kaiser Industries Corp. v. United States, supra, 340 F.2d

at 334, 169 Ct.Cl. at 331. This is the situation here. See Stein Bros. Mfg. Co. v. United States, 337 F.2d 861, 869, 162 Ct.Cl. 802, 817–818 (1963); WPC Enterprises, Inc. v. United States, 323 F.2d 874, 878, 163 Ct.Cl. 1, 8 (1963); C. J. Langenfelder & Son, Inc. v. United States, supra, 341 F.2d 600, 169 Ct.Cl. at 479–480; Associated Traders, Inc. v. United States, 169 F.Supp. 502, 506, 144 Ct.Cl. 744, 750–751 (1959); Wingate Construction Co. v. United States, 164 Ct.Cl. 131, 138 (1964).

It is pertinent to note that the Engineers Board's decision was almost wholly concerned with an analysis of Federal Specification HH–I–562, supra, to ascertain whether it permitted installation of blanket insulation material over the non-exposed ducts. In this context, the controversy here focuses on an interpretation of the contract specifications and is unlike American Marine Upholstery Co. v. United States, supra, which involved the application of undisputed contract provisions to external objects. See River Construction Corp. v. United States, 159 Ct.Cl. 254, 262–265 (1962). To this extent we are faced, therefore, with a legal question on which the administrative rulings of the contract appeals boards are not final as against the plaintiff, nor binding on this court. See, e. g., T. F. Scholes, Inc. v. United States, supra; Merritt-Chapman & Scott Corp. v. United States, 355 F.2d 622, 174 Ct.Cl. 250 (1966); Schmid v. United States, 351 F.2d 651, 173 Ct.Cl. 302 (1965). See also, Tufano Contracting Corp. v. United States, 356 F.2d 535, 174 Ct.Cl. 398 (1966); Gholson, Byars & Holmes Constr. Co. v. United States, 351 F.2d 987, 173 Ct.Cl. 374 (1965). Hol-Gar Manufacturing Corp. v. United States, 351 F.2d 972, 169 Ct.Cl. 384, 386 (1965).

■ The Engineers Board first determined that Federal Specification HH–I–562, supra, was clear and unambiguous in its requirement that only rigid material could be used to insulate non-exposed ducts. The fact that said Board gave almost conclusive effect to the Federal Specification, evidently feeling that any

other contract provision should either be ignored or considered inferior, is shown by the following excerpt from its decision of March 7, 1962, supra:

> Having found that the blanket insulation does not meet the applicable Federal Specification incorporated into the contract by reference, does a provision of the contract itself allow such use? We think not.

The Engineers Board did not even find that the provisions of the job specification were permissive, but rather that the Federal Specification could not be considered together with a general contractual provision. Therefore, it must necessarily have concluded that the contracting officer was not authorized to accept blanket insulation material, even if he considered it desirable to do so.

■■ In my opinion, it was patent error to ignore or treat inferior the words "other equally suitable material" contained in section 25–32e of the technical provisions and specifications of the contract. Every writing must be interpreted with reference to its whole meaning, and to this end an examination of the entire instrument is required. Trans Int'l. Airlines, Inc. v. United States, 351 F.2d 1001, 173 Ct.Cl. 312 (1965); Merrill-Ruckgaber Co. v. United States, 241 U.S. 387, 392, 36 S.Ct. 662, 60 L.Ed. 1058 (1916). Indeed, it is axiomatic that the polestar of interpretation is " * * * the intention of the parties [which] must be gathered from the whole instrument." See Hol-Gar Manufacturing Corp. v. United States, supra, and cases cited, in which the court went on to say, 169 Ct.Cl. at p. 395, 351 F.2d at p. 979:

> Also, an interpretation which gives a reasonable meaning to all parts of an instrument will be preferred to one which leaves a portion of it useless, inexplicable, inoperative, void, insignificant, meaningless or superfluous; nor should any provision be construed as being in conflict with another unless no other reasonable interpretation is possible.

In ascertaining the intention of the parties, the instrument is construed as an entirety,. and we should be careful not to accord greater weight to certain words and phrases while excluding others from our consideration. Abe L. Greenberg Co., Inc. v. United States, 300 F.2d 443, 446, 156 Ct.Cl. 434, 439–440 (1962).

The case law cited above leads to the inescapable conclusion that defendant's isolation of the Federal Specification as the basis for its position in denying plaintiff's claim was erroneous and must be rejected.

■ In my opinion, the technical provisions and specifications incorporated in the contract are ambiguous and this fact is illustrated by the conflicting interpretations placed upon them by the parties, which joined in giving birth to this lawsuit. When these provisions are considered together, as they must be, it is apparent that more than one reasonable conclusion can be reached. That is to say, it appears to me that the meaning of these provisions is not so explicit as to put the contractor on notice that only rigid insulation would be accepted. On the contrary, the phrase "other equally suitable material" could very well be meaningless, if that construction were adopted. The contention of defendant bears this out for it does not offer any explanation of how these provisions can be harmonized, short of ignoring the job specification. Had the word "rigid" or an equivalent been inserted in the contract so that the specification would have read "other equally suitable *rigid* material", the case would take on a different appearance. In this attitude of the controversy, however, I am unable to conclude, as a matter of law, that these provisions are subject to only one reasonable interpretation.

Moreover, the Government's position leads to the conclusion, as intimated by the Engineers Board, that for more than

eight years Government contracting officers or their representatives had been derelict in their functions or neglectful of their duties. Such an assumption is not warranted by the record. If assumptions should be indulged in at all, it seems more logical to assume that authorized Government personnel felt justified in approving the blanket insulation on the authority of the terminology here in dispute. And certainly no authority need be cited for the proposition that prior administrative interpretations are entitled to great weight.

It is clear plaintiff did not consider that the specifications furnished by the Government were unclear, ambiguous, or subject to a construction different from the one given to them by plaintiff. The record shows that plaintiff prepared its bid, and planned and attempted to perform the contract work, in a manner consistent with its interpretation and construction of the contract specifications. Plaintiff gave a meaning to the specifications which, in light of its knowledge of how similar contracts had been treated in the past, was not unreasonable or in any way improper under the circumstances here.

■ I am very careful to distinguish this case from those decisions which imposed a duty on the contractor to make inquiry of the Government when he is presented with contract specifications disclosing "an obvious omission, inconsistency, or discrepancy of significance." Beacon Construction Co. v. United States, 314 F.2d 501, 504, 161 Ct.Cl. 1, 7 (1963). It is not every possible ambiguity or doubt which creates such a duty. And "within the zone of reasonableness", the risk of a difference of interpretation must be borne by the Government. WPC Enterprises, Inc. v. United States, supra, 163 Ct.Cl. at 6, 323 F.2d 874. The oft-cited rule announced in Peter Kiewit Sons' Company v. United States, 109 Ct.Cl. 390, 418 (1947), is thus applicable:

   * * * Where the Government draws specifications which are fairly susceptible of a certain construction and the contractor actually and reasonably so construes them, justice and equity require that that construction be adopted. Where one of the parties to a contract draws the document and uses therein language which is susceptible of more than one meaning, and the intention of the parties does not otherwise appear, that meaning will be given the document which is more favorable to the party who did not draw it. This rule is especially applicable to Government contracts where the contractor has nothing to say as to its provisions.

See Tufano Contracting Corp. v. United States, supra, 174 Ct.Cl. at 404, 405, 356 F.2d at 539; C. J. Montag & Sons, Inc. v. United States, 348 F.2d 954, 172 Ct.Cl. 501 (1965); Kings Electronics Co., Inc. v. United States, 341 F.2d 632, 641, 169 Ct.Cl. 433, 442 (1965); C. J. Langenfelder & Son, Inc. v. United States, supra, 169 Ct.Cl. at 482, 341 F.2d 600; Wingate Construction Co. v. United States, supra, 164 Ct.Cl. at 136–137; WPC Enterprises v. United States, supra, 323 F.2d 874, 163 Ct.Cl. at 6. Also see Gholson, Byars & Holmes Constr. Co. v. United States, supra, wherein, 351 F.2d at p. 1000, 173 Ct.Cl. at p. 396, the court made the following statement which is pertinent to our inquiry here:

   * * * in view of the fact that there was no provision in the contract which expressly or by implication precluded resort to usage in defining the meaning of its terms, plaintiff's reliance thereon to determine the meaning of the specification requirement in question was entirely reasonable; any ambiguity on this score must be resolved against the government as the drafter of the instrument.

What has been decided at this juncture of the discussion herein is that a flexible insulation, if "equally suitable", complies with the contract specifications. If the Government desired to assure that only rigid material would be installed, it should have taken the necessary steps to add to, or change, the job specification.

Since the clause "or other equally suitable material" was included *in toto* without any expressed qualification, it must be accorded that meaning which is reasonable and abiding in the trade.

It is apparent that the basis of the Engineers Board's refusal to consider evidence of trade usage, custom or practice was its holding that the contract was unambiguous. Thus, my conclusion that the contract was ambiguous crumbles the props upon which the decisions below rest. Evidence of trade usage, custom and practice was properly before the Boards and should have been considered. But even in the absence of any ambiguity, the Board committed legal error by failing to consider such evidence. The foregoing is not open to serious question in view of the following pronouncement of this court:

> * * * [T]he principle is now established in this court (and almost every other court) that in order that the intention of the parties may prevail, the language of a contract is to be given effect according to its trade meaning notwithstanding that in its ordinary meaning it is unambiguous. That is to say that trade usage or custom may show that language which appears on its face to be perfectly clear and unambiguous has, in fact, a meaning different from its ordinary meaning. [Gholson, Byars & Holmes Constr. Co. v. United States, supra, at 395, 351 F.2d at 999, and authorities cited.] [5]

The decisions of the Boards below are replete with declarations of the general rule that evidence of trade usage may not vary or contradict plain contract language. While that rule is correctly stated, it is not applicable or controlling here because a close analysis of the administrative opinions discloses that only one provision of the contract was examined and taken into considera-tion. Moreover, evidence of trade usage and custom may always *explain* or *define*, as distinguished from *vary* or *contradict*, contract language. That is the status of the controversy before us. Assuming, *arguendo*, that the only ordinary meaning which could be placed upon the words "other equally suitable material" would exclude flexible insulation, evidence of trade usage still must be taken into consideration, since it supplies a meaning to that phrase which is not disclosed from a casual reading thereof. Even in the absence of ambiguity, contract language must be given that meaning which "would be derived from the contract by a reasonably intelligent person acquainted with the contemporaneous circumstances." Hol-Gar Manufacturing Corp. v. United States, supra, 351 F.2d at 975, 169 Ct.Cl. at 388.

Defendant's contentions to the effect that (1) the evidence before the administrative boards did not establish the existence of a trade usage of blanket insulation material for the purposes involved here, and that (2) in any event, such a trade usage was not known to the Government, are unsupported by the record before the court and rejected.

With respect to defendant's first above-stated contention, it appears this issue was resolved in favor of plaintiff as evidenced by the following finding which was set forth in the Engineers Board's decision, supra, and adopted by the ASBCA:

> The appellant has proved to our satisfaction, and we find, that some employees of the Washington District had regularly allowed installation of blanket insulation for non-exposed ducts, notwithstanding reference in the contracts to Federal Specification HH–I–562 and the fact that some other District personnel did not consider that such material complied with that specification. We further are con-

---

5. In *Gholson*, supra, the court found it unnecessary to decide whether or not the provision in controversy there was ambiguous. Perhaps that issue also could be skirted in the case at bar, but it was considered best to meet and decide that question for the purposes of this opinion.

vinced, and find, that this practice has been sufficiently widespread and long standing that subcontractors in the area preparing bids for insulation work to be submitted to general contractors bidding jobs in that District have based their computations on using blanket insulation in spite of the presence in the contract by reference of Federal Specification HH–I–562. * * *

▮ As to defendant's second contention, it suffices to say that the Government is charged with knowledge when (as here) the evidence establishes that the usage was a long-standing, widespread, "well-defined and obviously well-recognized one." Gholson, Byars & Holmes Constr. Co. v. United States, supra, 351 F.2d at 1000, 173 Ct.Cl. at 396, and authorities cited.

In summary, whether or not the contract specifications are considered ambiguous, evidence of trade usage, custom and practice should have been considered at the administrative level. Since this was not done, legal error was committed. Furthermore, on the basis of trade usage, it must be concluded that flexible blanket insulation was included within the meaning of the phrase "other equally suitable material."

The foregoing conclusions, however, are not sufficient to dispose of this case. As I view the matter, my conclusion that the plaintiff gave a reasonable interpretation to the ambiguous and misleading specifications is not an adequate basis for allowing plaintiff to recover the claimed difference in cost between the rigid material used and the blanket material submitted, if under no circumstances could the latter offered to defendant be considered "equally suitable" under any reasonable application of the provision in the contract. With reference to this question, both of the lower tribunals apparently found that the blanket material was in fact "equally suitable", but they considered this fact not to be material to the controversy between the parties. The position of the Engineers Board as to the foregoing is shown by the following statement which appears in its decision:

* * * That blanket insulation may give as good a, or even a better, job from the standpoint of insulating qualities and cost as board insulation meeting Federal Specification HH–I–562 is possible, but it is not material to the dispute under consideration.

On this same subject matter, the ASBCA made the following statement in its decision:

It is not material in this case, as claimed by the appellant, that the blanket insulation in the concealed areas served the needs of the Government as well or better than the board type. * * *

▮ Although the administrative boards considered the question of whether the material submitted was "equally suitable" to be immaterial and irrelevant, that fact does not lessen the probative force of the determination that the material was "equally suitable". There was substantial supporting testimony before the Board which indicated that blanket insulation was "equally suitable" and that finding is accepted.

As noted previously, the contract and the Wunderlich statute vested discretion in the contracting officer to approve or disapprove of insulating material. It is apparent from what has already been said that he was not justified in disapproving the blanket insulation. The contracting officer disapproved the substitution of blanket material, not because it was inferior but because he interpreted the contract as giving the Government the right to insist on rigid insulation, even though the blanket material was equal in all respects. What the Government did here was to mislead plaintiff into bidding upon the basis that an "equally suitable material" could be used and then, through the device of fact-finding, refused to find any but the rigid material satisfactory. As noted earlier, this is a determination which is not unassailable in this court for it is a legal issue.

While the Government had the undisputed right to decide if the blanket material met the standards set forth in the contract documents, "it is equally elementary that the discretion involved must be exercised reasonably and fairly." Fox Valley Engineering, Inc. v. United States, 151 Ct.Cl. 228, 236 (1960); Jack Stone Company, Inc. v. United States, 344 F.2d 370, 373, 170 Ct.Cl. 281, 287–288 (1965). The Government's arbitrary and capricious interpretation of the specifications, and refusal to grant an equitable adjustment for the change so brought about, were grossly erroneous actions as a matter of law. That is sufficient to vitiate its adverse decision on plaintiff's claim. However, conceding for the sake of argument that a question of fact is being reviewed, the same result is reached because the record shows that the contracting officer did not consider evidence of trade usage, custom and practice. Thus, the decision that only rigid type insulation complied with the specifications was erroneous as it lacked in content the necessary ingredient of support by substantial evidence. Accordingly, an equitable adjustment should have been granted under these circumstances. Schmid v. United States, supra.

Since this case has been resolved on the basis of trade usage and interpretation of the contract specifications, it is unnecessary to consider the application of estoppel principles to the present controversy.

Plaintiff is entitled to judgment under the "Changes" clause of the contract for any additional expenses it incurred in installing board (rigid) type insulation on all concealed air conditioning ducts, rather than blanket (flexible) type insulation material. The determination of the amount of recovery will be reserved for proceedings under Rule 47(c),[6] which proceedings shall be suspended for a period of 6 months from the date hereof for the purpose of allowing plaintiff time to institute appropriate administrative proceedings, and to afford the Armed Services Board of Contract Appeals an opportunity to consider the issue of damages.[7] Plaintiff shall, on or before the last day of the above-specified suspension period, submit a report to the court setting forth the results of the administrative proceedings below and the then current status of this case.

## CONCLUSION OF LAW

Upon the foregoing opinion which includes therein the findings of fact and which is adopted by the court and made a part of its judgment herein, the court concludes as a matter of law that plaintiff is entitled to judgment under the "Changes" clause of the contract for any additional expenses it incurred in installing board (rigid) type insulation on all concealed air conditioning ducts rather than blanket (flexible) insulation material. The determination of the amount of recovery will be reserved for proceedings under Rule 47(c), which proceedings herein shall be, and hereby are suspended for a period of six months from the date hereof for the purpose of allowing plaintiff time to institute appropriate administrative proceedings, and to afford the Armed Services Board of Contract Appeals an opportunity to consider the issue of damages. Plaintiff shall, on or before the last day of the above-specified suspension period, submit a report to the court setting forth the result of the administrative proceedings below and the then current status of this case.

6. See footnote 2, supra.

7. Under the facts and circumstances presented here, suspension of proceedings in this court for the purposes stated is necessary because of the mandate of the Supreme Court arising out of its decision rendered on June 6, 1966 in United States v. Anthony Grace & Sons, Inc., 384 U.S. 424, 430–431, n. 6, 86 S.Ct. 1539, 16 L.Ed. 2d 662, (1966).