**D & L CONSTRUCTION CO. & ASSOCIATES**

v.

**The UNITED STATES.**

**No. 333–65.**

United States Court of Claims.

June 9, 1967.

Joel E. Wise, Washington, D. C., for plaintiff. W. E. Fitzpatrick, Los Angeles, Cal., attorney of record; Fitzpatrick & Lewi, Los Angeles, Cal., of counsel.

Charles E. Drake, Washington, D. C., with whom was Asst. Atty. Gen. Barefoot Sanders, for defendant. Katherine H. Johnson, Washington, D. C., of counsel.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON, and NICHOLS, Judges.

ON DEFENDANT'S MOTION AND PLAINTIFF'S CROSS MOTION FOR SUMMARY JUDGMENT

SKELTON, Judge.

This controversy, as the one in D & L Construction Co. & Associates v. United States, Ct.Cl. No. 281–65, 378 F.2d 675, decided this day, had its origin in the attempted construction of a Capehart housing project.

In this action which arises upon cross motions for summary judgment, plaintiff seeks to recover $59,691, which includes the total of its application fee paid to the Federal Housing Administration (hereinafter referred to as "FHA") in connection with applications for mortgage insurance commitments and sums representing travel and lodging, plus attorneys' fees and certain administrative expenses incurred in partial performance of the requirements of a Letter of Acceptability issued to it by defendant and prior to its cancellation for default by the defendant.[1]

The plaintiff's claim is predicated upon its contention that it was unable to fully

---

1. There is no claim for the return of the plaintiff's bid deposit as it was refunded on March 25, 1960.

comply with all of the requirements of the Letter of Acceptability because the defendant, acting through the FHA, improperly "failed, neglected and refused to issue" amended insurance commitments as requested. The defendant maintains that it could not legally issue the amended insurance commitments for reasons hereinafter stated, and, therefore, the plaintiff's default was not caused by any improper action or omission on the part of the defendant.

These competing positions frame one of the basic questions—Is the "lowest acceptable bid" to be finally determined, at the time the bids are opened and a Letter of Acceptability issued, or at some later date?

We are of the opinion that the "lowest acceptable bid" is to be finally determined when the bids are opened and a Letter of Acceptability issued. Our reasons follow a summarization of the facts.

On April 15, 1959, the plaintiff, in response to an Invitation for Bid styled No. 16–605–59–37, issued by the defendant, acting through the Department of the Air Force, submitted its bid in the total sum of $4,876,000,[2] to construct 300 units of housing on the Chennault Air Force Base at Lake Charles, Louisiana. The Invitation for Bids further required that the plaintiff submit a bid price for construction of the 300 unit project showing such price segregated into two categories of work; one termed the "basic bid" which included all the essential features of the housing units and the other as "additive alternates" which included items of work which were desirable, but not essential. Plaintiff bid the sum of $4,681,000, as its basic bid and the sum of $195,000, for additives 1, 3, 5, 8, 9, and 10.

The plaintiff's bid was subsequently determined to be the lowest acceptable bid and on May 27, 1959 the defendant issued a Letter of Acceptability in which it among other things advised the plaintiff that it was obligated to perform cer-

tain acts. These included: (1) forming certain mortgagor-builder corporations; (2) obtaining title insurance or other evidence of title; (3) arranging for financing the construction of the units; (4) furnishing commitments for mortgage insurance to be issued by the FHA; (5) acknowledging receipt of such writing; and (6) estimating the time necessary to accomplish the aforesaid acts. The plaintiff was required to perform all of such acts on or before July 30, 1959, which closing date was subsequently extended until September 18, 1959. The plaintiff duly acknowledged receipt of such Letter and furnished the required schedule.

The Letter of Acceptability and the Invitation for Bids provided for the increase or decrease of the plaintiff's bid to reflect any increase or decrease in prevailing wage rates between the time of the bid and the commencement of construction. Determination of such increase or decrease would be made by the Commissioner of the Federal Housing Administration.

In this vein, paragraph 5 of the Invitation for Bids reads as follows:

5. Under the provisions of Title IV of the Housing Amendments of 1955, as amended, the total principle amount of the mortgages is limited, among other things to the amount of the bid of the eligible builder. However, the Davis Bacon Act and Section 212(a) of the National Housing Act as amended require that wages paid to laborers and mechanics be the prevailing wage as determined by the Secretary of Labor not more than ninety (90) days prior to the commencement of construction. Since more than ninety (90) days may elapse from the date of this Invitation for Bids to the commencement of construction, the bids called for by this Invitation for Bids will include a provision for adjustment of the dollar amount therein specified to reflect any difference between the tentative minimum wage schedule attached hereto and the applicable minimum wage

---

2. The statutory limit was in the amount of $16,500 per unit which equals $4,950,000 on the basis of 300 units.

schedule as finally determined by the Secretary of Labor. *Any such adjustment will be in an amount determined by the Commissioner to reflect such differences, and the amount of the lowest acceptable bid and the FHA estimated total replacement cost of the projects will be amended in the amount so determined by the Commissioner; except that, if such an adjustment would increase the amount of the bid above the amount of any other statutory maximum applicable to the insurable mortgages, the eligible builder will have the option of reducing his bid to such statutory maximum or of withdrawing his bid.* [Emphasis supplied.] The meaning of the above provision is one of the matters now in dispute.

On or about June 11, 1959, the plaintiff, through its lender, Security First National Bank of Los Angeles, California, made application to the defendant, acting through the FHA, for mortgage insurance to insure the financing of the construction of the project. The plaintiff furnished the required application fee in the sum of $7,314.

On June 23, 1959, the Commissioner of the FHA issued his Commitments for Insurance based upon the amount of plaintiff's bid. On June 30, 1959, the FHA amended the commitments issued June 23, 1959, to read in pertinent part as follows:

\* \* \* \* \* \*

13(a) This Commitment is subject to reprocessing for Prevailing Wage Determination but in no event shall the total amount exceed the statutory limit of $16,500 per unit multiplied by the total number of units.

(b) This Commitment is also subject to *written assurance* by the Department of the Air Force that the selected additive alternates will be deleted prior to closing, if necessary to remain within such statutory limits. [Emphasis supplied.]

\* \* \* \* \* \*

Then, on August 14, 1959, the Commissioner, acting through his duly authorized representative, the Director of the FHA

at New Orleans, Louisiana, requested that the Commitments for Insurance previously issued on June 23, 1959, be returned for the issuance of amended commitments to reflect increases in the prevailing wage rates. The Commissioner further advised the plaintiff that he had determined that the change in wage rates would result in an increase of $319,933, in the amount of the commitments when such increase was computed on the portion of the Commitments for Insurance pertaining to the basic units and that such adjustment would result in a like increase in the plaintiff's bid.

On August 15, 1959, the plaintiff returned the insurance commitments to the FHA, accompanied by the following letter:

It is our intention to exercise our option and waive this amount of increase after amendment of the letter of acceptability to provide for the elimination of all additives. This is to request you to issue your amended commitments in the amount of the statutory limit of sixteen thousand five hundred ($16,500) dollars per unit, and amend your project analysis to show the scope of the work as including base house. Hoping this meets with your approval.

As will be remembered, the plaintiff's base bid, excluding additives, totaled $4,681,000. When the adjustment for the wage increase in the amount of $319,933 was added to that bid price it exceeded the statutory limit of $4,950,000 by $50,933. The plaintiff's letter quoted above recognized this fact and thereby the plaintiff exercised its option under paragraph 5 of the Invitation for Bids, supra, by offering to waive the amount in excess of the statutory ceiling.

No amended Commitments for Insurance, nor any other communication revealed by the record before us was ever received from the defendant until October 15, 1959. On that date the defendant advised the plaintiff that it had failed to exercise its option of reducing its bid to the statutory maximum or of withdrawing its bid by the extended closing date

of September 18, 1959. Thus, pursuant to paragraph 2, of the Letter of Acceptability,[3] the Air Force cancelled all commitments undertaken with the plaintiff in connection with the construction of the subject project. Thereafter, the plaintiff filed this suit.

The defendant contends that it could not accept the plaintiff's proposal set out in its letter of August 15, 1959, for two reasons: (1) The FHA estimate of replacement cost for the basic units alone was $4,574,833, whereas the plaintiff's bid for the basic units alone was $4,681,000; and (2) The plaintiff was not the lowest acceptable bidder for the basic units alone.[4]

To support its position the defendant relies upon the Capehart Act, 69 Stat. 646, 648, as amended, 12 U.S.C. § 1748b (b) (3) (1964), which reads in pertinent part:

(3) *The mortgage shall involve a principal obligation in an amount—*

(A) *not to exceed the amount which the [FHA] Commissioner estimates will be the replacement cost of the property or project* when the proposed improvements are completed * * *;

(B) not to exceed an average of $16,500 per family unit * * *; and

(C) not to exceed the bid of the eligible bidder * * *. [Emphasis supplied.]

* * * * * *

The defendant's argument is that since the estimated replacement cost of the FHA was less than the plaintiff's proposed bid covering only the basic units, it was precluded, under the above-quoted section, from issuing amended insurance commitments.

Alternatively, the defendant says that under the Capehart Act, supra, at 651–52, as amended, 42 U.S.C. § 1594(b) (1964), the plaintiff could not have been determined to be the lowest acceptable bidder since another bid, in a less amount than the plaintiff's was submitted for the basic units alone.

Section 1594(b) sets forth the definition of "eligible bidder" in the following language:

For the purposes of this subchapter [Housing For Military Personnel] the term "eligible bidder" means a person, partnership, firm, or corporation determined by the Secretary after consultation with the Commissioner (1) to be qualified by experience and financial responsibility to construct housing of the type described in subsection (a) of this section, and (2) to have submitted the lowest acceptable bid.[5]

Having concluded that it was not legally obligated to issue the amended commitments, the defendant naturally maintains that the plaintiff has no legal basis for recovery of expenses incurred in the course of its partial performance of the requirements of the Letter of Acceptability. With respect to the FHA application fee, the defendant expresses the view that since the bank was the lender, the plaintiff would not be the proper party to seek a refund of that fee, and, in any event, the lack of an allegation in the petition charging the FHA with an abuse of discretion in failing to return the fee bars the plaintiff's recovery.

It is essentially the defendant's position that the option afforded to plaintiff under paragraph 5 of the Invitation for

---

3. The Letter of Acceptability provided: "2. Failure to perform all obligations prior to the time prescribed for closing will be just cause for cancelling all commitments undertaken with you in connection with the housing project * * *."

4. While the plaintiff's overall bid encompassing the additives was the lowest bid, Kesk, Inc., which submitted a figure of $4,573,333 for construction of the basic

unit, was the lowest bidder on that item, and, after cancelling plaintiff's contract, defendant awarded a contract to Kesk, Inc., on its bid.

5. Defendant does state that the FHA could and would have issued the amended commitments had the plaintiff's proposal been one that it could have legally accepted.

Bids, supra, was one of either withdrawing its bid, or of *reducing its bid for the basic units alone to that of the lowest bidder on that item*. The defendant says that the lowest bid remains the lowest for the work to which it refers whether wage scales are ultimately increased or decreased.

Throughout the presentation of the plaintiff's case, it identifies as one of the issues for our determination whether the contract documents required elimination of "additive alternates" in the event that the adjustment for wage fluctuations resulted in an increase in such an amount that when it was added to the bid for the basic housing units, the limitation of $16,500 per unit was equalled or exceeded.

Inasmuch as the defendant in its reply argument states that the Air Force did delete the selected additives to permit construction costs to remain within the monetary maximum, we believe that the defendant is in accord with the plaintiff's interpretation of the applicable documents in this respect and it abandons any interpretation to the contrary. See D & L Construction Co. & Associates v. United States, Ct.Cl. No. 281–65, 378 F.2d 675, supra, wherein the defendant willingly deleted additive items.

We agree with the plaintiff, however, that the defendant's position as to the plaintiff's bid exceeding the FHA estimated replacement cost for the basic houses is immaterial.

■ Although 12 U.S.C. § 1748b(b)(3) (1964), prohibits the principal obligation of the mortgage from exceeding the estimated replacement cost of the project, the FHA estimated replacement cost as well as the lowest acceptable bid were required by paragraph 5, of the Invitation for Bids, supra, to be amended to mirror wage adjustments with a corresponding amendment to the insurance commitments. The Invitation specifically informed the bidders that:

\* \* \* The following provisions of this Invitation, the provisions of the several instruments, and the Statute and regulations promulgated thereunder determine the rights and obligations of the parties in interest.

It is apparent, therefore, that considering *all* of the applicable provisions, the statute in this instance only prohibits a mortgage from involving a principal obligation in an amount which exceeds the *amended* estimated replacement cost of the project.[6] W. G. Cornell Co. v. United States, Ct.Cl., 376 F.2d 299, decided April 14, 1967. The initial estimated replacement cost to which the defendant refers does not bear upon the plaintiff's claim since the FHA did not amend the estimated replacement cost as required by paragraph 5 of the Invitation for Bids, supra, although an increase in the prevailing wage scales was determined.

We also agree with the plaintiff as to the irrelevancy of the defendant's position that the plaintiff was not the low bidder with respect to the basic units.

■ The relative order of bids was, as in the case of all Government procurement, determined at the time the bids were opened. At that time and at the time the Letter of Acceptability was issued, no one could be aware of the amount that would be required for an adjustment of wages with the precision necessary to determine the relative order of the bids. With the issuance of the Letter of Acceptability, the plaintiff became contractually obligated to perform certain acts under penalty of forfeiture of its bid deposit, and the defendant as one of the

---

**6.** The defendant does not argue in its brief that the principal amount of the mortgage would have exceeded the estimated replacement cost of the project as amended. In addition, the court as a whole cannot clearly recall the presentation of such a contention upon oral argument. Based upon the skeletal facts and figures contained in the defendant's brief and in the absence of criteria by which replacement costs are determined, it would be mere speculation and conjecture to attempt the tabulation of a replacement cost figure which the Commissioner might have arrived at. An issue of this gravity should be timely raised in written form.

contracting parties also became obligated at that time. Anthony P. Miller, Inc. v. United States, 161 Ct.Cl. 455, 468, cert. denied, 375 U.S. 879, 84 S.Ct. 149, 11 L. Ed.2d 111 (1963). See, J. W. Bateson v. United States, 162 Ct.Cl. 566, 570 (1963). The fact that the scope of the work is thereafter changed in deference to the provisions in the contract documents requiring adjustments for wage fluctuations, could not enable the defendant to redetermine the order of the bids on the basis of severing the component amounts bid from the total bid price. It would be anomalous to say that there is a contractual relationship between the parties at the time a Letter of Acceptability is issued, but to fix a later date for the determination of the order of the bids.

■ The defendant, as outlined previously has construed the option given to the plaintiff pursuant to the Invitation as calling for either a withdrawal of the bid or a reduction of the bid to that of the lowest bidder on the particular item remaining. But the Invitation is silent on the subject of how to treat a competitive bid and speaks only of "reducing his [the eligible bidder's] bid to such statutory maximum." We are of the opinion, that the plaintiff effectively and properly exercised its option under paragraph 5 of the Invitation for Bids, supra, when it advised the defendant of its intention to exercise the option by waiving the amount of increase in excess of the statutory maximum.

■ It is our view that the defendant, acting through the FHA, was legally capable of accepting the plaintiff's proposal and could have issued the amended insurance commitments. Accordingly, the plaintiff has demonstrated entitlement to the return of its application fee in the amount of $7,314.[7] See, Terminal Constr. Corp. v. United States, 171 Ct.Cl. 1, 9 (1965).

We are further of the opinion that the plaintiff is entitled to recover the rea-

sonable and necessary cost of the work it performed preparatory to the commencement of construction. However, we are unable to determine the exact amount of such costs.

For these reasons the defendant's motion for summary judgment is denied and plaintiff's cross-motion is granted. Plaintiff is entitled to recover its application fee of $7,314, together with reasonable and necessary costs expended by it in performing work preparatory to the commencement of construction prior to the cancellation of the Letter of Acceptability by the defendant, and judgment is entered to that effect. The amount of recovery will be determined under Rule 47(c).

---

7. Since it is not disputed that the plaintiff furnished the fee, we see no reason to deny its recovery in the present action.