DARWIN CONSTRUCTION COMPANY, Plaintiff,

v.

UNITED STATES of America, Defendant.

No. 92–765 C.

United States Court of Federal Claims.

June 24, 1994.

Howard A. Pollack, Washington, DC, for plaintiff.

Jeffrey R. Davis, with whom were Acting Asst. Atty. Gen. Stuart E. Schiffer, David M. Cohen and Thomas W. Petersen, Washington, DC, for defendant. Martin A. Hom, Gen. Services Admin., of counsel.

## OPINION and ORDER

TURNER, Judge.

This opinion addresses defendant's motion for summary judgment filed on May 6, 1993. We conclude that defendant's motion should be denied.

### I

On March 27, 1986, the General Services Administration (GSA) awarded fixed-price contract No. GS–11P86MKC7209 to Darwin Construction Company (plaintiff). For the contract price of $2,553,355, plaintiff was required to furnish all labor and materials and perform various sitework at the Southwest Quadrant Development International Chancery Center in Washington, D.C. A portion of the work consisted of supplying and planting a number of trees, shrubs, perennials and bulbs in certain locations designated on contract drawings.

This dispute arises from the parties' differing interpretations of contract drawing 17–4, entitled "Planting Plan D & Plant List." Def.Br., Appendix 1. On the left-hand side of drawing 17–4 are two adjacent but distinctive columns. At the top and center of the column on the left, in enlarged capital letters, is the heading "PLANT LIST." Underneath this heading is a lengthy list of plants divided into three categories: *"Trees/Shrubs;" "Perennials"* and *"Bulbs."* To the right of this column beginning approximately one third of the way down from the top of the drawing is the second column. At the top and center of this column is the heading "PLANTINGS BY LOTS." Underneath this heading there is also a list of plants. However, unlike the

"PLANT LIST" column, in the "PLANTINGS BY LOTS" column the plants are divided by "Lot." The lot numbers correspond to plots mapped on the accompanying drawings of the grounds.

The two columns give the appearance of functionally distinct lists. Plaintiff, in fact, considered the two as such and accordingly prepared its bid based upon the quantities enumerated beneath the "PLANT LIST" heading.[1] Only after close comparison of the two columns does it become clear that the two columns contain different quantities of plants. During the performance of the contract, plaintiff learned that the GSA considered both columns as a single, inclusive list. Pursuant to this interpretation, the GSA required plaintiff to supply and transplant all of the plants listed in the "PLANTINGS BY LOTS" column in addition to those in the "PLANT LIST" column. Plaintiff complied with GSA's interpretation and completed the contract.

Plaintiff, pursuant to the Contract Disputes Act of 1978, 41 U.S.C. §§ 601–613 (1988 & Supp. IV 1992), submitted to the contracting officer (CO) a claim for an equitable adjustment of $115,831 for costs incurred in performing work that was not required by the contract. The CO thereafter issued a final decision, denying plaintiff's claim. The CO held that

> The Government['s] position is that the plants listed on drawing 17–4 are one list. The portion of the list in the right column identified as "PLANTING[S] BY LOTS" reflects those plants planted at the front of each lot, while the portion of the list comprising the left column with sub headings "TREE[S]/SHRUBS", "PERENNIALS", "BULBS", and "OTHER BULBS" are the plants to be provided in the general planting area at the rear of the lots. The sum of plants in both the left and right columns

---

1. Section 02800, ¶ 2.1 of the specifications provides in pertinent part that

   Specimens shall meet [the] requirements of the *plant list* .... The contract will be based on the bidder having verified, prior to bidding, all sources of supply, to insure that all of the plants on the *planting list,* of the size, species, variety and quality noted and specified can be

> supplied. Failure to take this precaution may result in the Contracting Officer procuring the items and the Contractor being held liable for all costs for furnishings and installing the plants in accordance with the contract requirements.

(Emphasis added.)

total the plants to be provided under the contract.

Complaint, Appendix at 1. Plaintiff's complaint seeks the equitable adjustment denied by the CO's final decision. Defendant has moved for summary judgment.

## II

Defendant argues that plaintiff's interpretation of the contract would render superfluous and meaningless the "PLANTINGS BY LOTS" portion of the specifications. Because the preferable method of construing a contract is to avoid rendering language superfluous and meaningless, defendant urges us to reject plaintiff's interpretation. Def.Br. at 3–6. In effect, defendant argues that the specifications in contract drawing 17–4 are unambiguous and that the "PLANTINGS BY LOTS" column is clearly an extension of the "PLANT LIST." In the alternative, defendant contends that if the contract is ambiguous, the ambiguity is patent and plaintiff failed in its obligation to seek clarification before bidding on the contract. Therefore, concludes defendant, the ambiguity should be construed against plaintiff. *Id.* at 7.

Plaintiff responds that its interpretation is the only reasonable one because, based on the plain meaning of contract drawing 17–4 and the custom in the landscaping industry, plaintiff understood the "PLANTINGS BY LOTS" list solely as designating where the various plants on the "PLANT LIST" were to be placed. Pl.Br. at 9–10. Plaintiff has submitted the affidavits of its president, Lester Robinson, who has been bidding on landscape work as part of construction contracts for over forty years, and of landscape architect Walter Reynolds, who has over twenty years of experience in the industry. Both aver that the long-standing practice in the industry is to rely on and bid from a "PLANT LIST" and that a "PLANTINGS BY LOTS" list is used only to designate plant locations. Pl.Br., Appendix 1 and 2.

Plaintiff also argues that if we determine that the contract is ambiguous, we should adopt its interpretation of the contract because it is within the "zone of reasonableness" and under the rule of *contra proferentum*, where a contract is susceptible to more than one interpretation, the contract must be construed against the drafter. *Id.* at 15.

## III

■ Our first responsibility in construing disputed contract terms is to ascertain whether an ambiguity exists. *John C. Grimberg Co., Inc. v. United States,* 7 Cl.Ct. 452, 456, *aff'd,* 785 F.2d 325 (Fed.Cir.1985). If, as defendant contends, the language of the contract is unambiguous, then the words "are to be given their plain and ordinary meaning." *Thanet Corp. v. United States,* 219 Ct.Cl. 75, 82, 591 F.2d 629 (1979). Although defendant states this general rule, notably absent from defendant's briefs is any argument that plaintiff's understanding deviated from the plain and ordinary meaning of the contract. Furthermore, defendant has not proffered its own alternate definition of the plain and ordinary meaning of the terms "PLANT LIST" and "PLANTINGS BY LOTS." [2] The contract does not define or explain the two terms, nor does it expressly state that the "PLANTINGS BY LOTS" column is a part of the "PLANT LIST." Because defendant has not pointed to specific contract terms (to support its interpretation), we cannot conclude here that the contract is unambiguous.

■ Instead, defendant relies heavily on the rule that, "[a]n interpretation that gives a *reasonable* meaning to all parts of the contract will be preferred to one that leaves portions of the contract meaningless." *Fortec Constructors v. United States,* 760 F.2d 1288, 1292 (Fed.Cir.1985) (emphasis added). But the fact that defendant's interpretation gives meaning to all the contract terms does not require us to conclude that this is the mutually intended meaning of the contract. Plaintiff has raised a genuine issue of material fact as to the possible existence of a spe-

---

**2.** The CO's interpretation the contract does not appear to be based on the plain and ordinary meaning of the terms. The final decision implicitly defines "PLANTINGS BY LOTS" as the category of plants required for planting at the front of each lot and *"Trees/Shrubs," "Perennials"* and *"Bulbs"* as those categories of plants to be planted in the general planting area at the rear of the lots. Complaint, Appendix at 1. This definition is nowhere reflected in the contract.

cialized meaning and usage in the industry of the term "PLANTINGS BY LOTS."

■ Although contract interpretation is generally a question of law, questions of fact can arise as part of the analysis. What is most reasonable in a given set of circumstances is an issue of fact. *D & S Universal Mining Co. v. United States,* 4 Cl.Ct. 94, 97 (1983). Moreover, the existence of industry or trade practice is a question of fact, *John McShain, Inc., v. United States,* 199 Ct.Cl. 364, 370, 462 F.2d 489 (1972), evidence of which "may always *explain* or *define,* as distinguished from *vary* or *contradict,* contract language." *W.G. Cornell Co. v. United States,* 179 Ct.Cl. 651, 670, 376 F.2d 299 (1967) (emphasis in original).

■ The Court of Claims, in *Hol–Gar Mfg. Corp. v. United States,* 169 Ct.Cl. 384, 388, 351 F.2d 972 (1965), held that "the language of a contract must be given that meaning that would be derived from the contract by a reasonably intelligent person acquainted with the contemporaneous circumstances." The critical question is what a reasonable contractor would understand to be its obligations under the contract, not what the drafter of the contract terms subjectively intended. *See Corbetta Construction Co. v. United States,* 198 Ct.Cl. 712, 461 F.2d 1330, 1336 (1972). The rationale for this rule is that

> [i]t puts the risk of ambiguity, lack of clarity, and the absence of proper warning on the drafting party which could have forestalled the controversy; it pushes the drafters toward improving contractual forms; and it saves contractors from hidden traps not of their own making.

*Sturm v. United States,* 190 Ct.Cl. 691, 697, 421 F.2d 723 (1970). Thus we must place ourselves in the shoes of a reasonable contractor and decide how such a contractor would act in plaintiff's circumstances. *Western States Constr. Co. v. United States,* 26 Cl.Ct. 818, 825 (1992). Furthermore, if "in the context of a particular contract a term has a special meaning within an industry, the contractor is permitted to introduce evidence to establish that meaning. The government is accountable, as drafter, for using a term

that has a particular, specialized meaning to the anticipated reader." *Id.* at 824. Thus where the government fails to expressly modify an accepted trade term, the contractor who performs in accordance with a trade meaning will generally prevail. *See, e.g., John McShain, Inc. v. United States,* 199 Ct.Cl. 364, 462 F.2d 489 (1972).

■ Here, if a reasonable contractor preparing a bid would assume that the "PLANTINGS BY LOTS" list serves a distinct purpose separate from the "PLANT LIST" and that a comparison of the two is unneeded, then we would be faced with conflicting reasonable interpretations. Defendant's reading of the two columns as one list may on close scrutiny be a more internally consistent interpretation of the contract, but it nevertheless may not be the more reasonable one. Defendant cannot use a term which it knew or should have known had a specialized meaning, and then ascribe a different meaning to that term, even if the different meaning seems reasonable to a layman.

Accordingly, we find that plaintiff has presented sufficient evidence to demonstrate the existence of a genuine issue of material fact, to wit, the trade meaning in the landscaping industry of the terms "PLANT LIST" and "PLANTINGS BY LOTS."

### IV

Based on the foregoing, defendant's motion for summary judgment filed May 6, 1993 is DENIED WITHOUT PREJUDICE.

The parties shall file a joint status report not later than Monday, July 25, 1994 setting forth their views on appropriate scheduling and on whether this case should be consolidated with case number 93–395 brought by the same plaintiff and pertaining to the same contract.