Durfee, Judge,
delivered the opinion of the court:
This suit involves a claim for additional compensation that plaintiff corporation alleges it has earned through construction of sidewalks that were not included in the original construction contract. Defendant contends that the sidewalk construction at issue was included in the contract.
On June 20, 1958, an invitation was issued for bids on “Construction of Off-Site Utilities for Title VIII Housing” at McGuire Air Force Base, New Jersej. Included with the invitation to bid sent to prospective contractors were the technical specifications of the proposed work. These specifications did describe concrete sidewalks, some of which were included under Section G which pertained to road paving, and some of which were included as an additive alternate. (See finding 3(a) for the pertinent contract provisions). The term “additive alternate” is used to designate an item which is desirable but not essential. Both parties were aware of the term’s meaning. In the specifications distributed with the invitations to bid, the section dealing with additive alternates, including sidewalks, had been deleted. Accordingly, plaintiff did not include an estimate for the construction of concrete sidewalks in its bid.
On July 30, 1958 Contract No. AF 11 (626)-64 was awarded to plaintiff. The technical specifications which had accompanied the invitation to bid were incorporated into the contract.
In addition, the contract contained the following provisions:
GeNeral Provisions
*****
2. Specifications and drawings
The Contractor shall keep on the work a copy of the drawings and specifications and shall at all times give the Contracting Officer access thereto. Anything mentioned in the specifications and not shown in the drawings, or shown on the drawings and not mentioned in the specifications, shall be of like effect as if shown or *134 mentioned in both. In case of difference between drawings and specifications, the specifications shall govern. * * *
Special Provisions
H: $ * $ $
SP 1-02 Scope op work
All work which is manifestly necessary to carry out the intent of the drawings and specifications or which is customarily performed for such work shall be performed by the contractor. Any requirement shown on the drawings, but omitted from the specifications, or any requirement shown in the specifications but omitted from the drawings shall be considered as being required mider the contract as if set forth in both. Any change in drawings or specifications directed by the Contracting Officer shall be made in accordance with the clause hereof entitled “Changes.”
The sidewalk construction in dispute is a T-shaped area. The top of the “T” connects sidewalks leading from the on-site dwelling units at the project boundary line. Plain- ■ tiff’s interpretation of the specifications was that the deletion of the additive alternate providing for the concrete sidewalks completely eliminated any requirement on plaintiff's part to build concrete sidewalks.
Defendant contends that the deletion of the additive alternate providing for sidewalks only eliminated the requirement that plaintiff build those sidewalks which were additive .alternates and the off-site drawings contained a requirement for sidewalks which were not additive alternates.
The contract drawings which plaintiff had received are a series of 16 sheets. Sidewalks appear on sheets 5, 6, 7, 8, 9, 10, 11, 13, and 14. The areas designated as sidewalks are shown either by parallel solid lines or a series of parallel broken lines. On sheet 5, the area designated as a sidewalk is shown as parallel solid lines, and is referred to variously as a “new 5'0" cone, sidewalk” and a “new 5'0" cone, sidewalk (additive alternate).” Sheets 6, 7, 10, 11, 13, and 14 show part of the sidewalk area as parallel broken lines and part as parallel solid lines. Sheet 8 shows a portion of the sidewalk designated “additive alternate,” as both a series of *135 parallel broken lines and as of a sidewalk designated, as “concrete sidewalk, additive alternate,” as both a series of parallel broken lines and as parallel solid lines. Sheet 9 also shows a concrete sidewalk as parallel solid lines.
On November 18, 1958, plaintiff wrote, to defendant asking, among other things, “how to proceed with additive sidewalk item.” In the reply letter of December 2, 1958, defendant pointed out that a discussion of the matter had been forwarded to the Military Air Transport Service Headquarters and that no decision had as yet been received.
Plaintiff never received a site plan which provided for sidewalks. Further, plaintiff never received a copy of the Specifications for On-Site Work which did mention sidewalks. All that plaintiff did receive was the set of drawings discussed above. These drawings were not the same as a site plan.
On April 3, 1959 plaintiff informed defendant by letter that under its reading, the contract did not contain any requirement for the construction of sidewalks. The contracting officer, in a July 31 reply, directed that the sidewalks be constructed. Plaintiff protested the directive in its letter of August 6, 1959, but nevertheless proceeded with the installation of the sidewalks.
Upon completion of the sidewalks plaintiff submitted a claim for additional compensation in the sum of $4,684.21, and on December 21, 1959 plaintiff appealed the contracting officer’s interpretation of the contract to the Armed-Services Board of Contract Appeals.
On August 19, 1960 the Board rendered its decision denying plaintiff’s claim for extra compensation on the ground that the sidewalks in the off-site area were required by the contract. Plaintiff then initiated suit here.
Defendant first argues that the contract was clear and unambiguous; that the obligations and duties of both parties were clearly set forth in the instrument and the attendant documents and circumstances. Under defendant’s reading, the sidewalks were clearly required. Plaintiff on the other hand read the deletion of the additive alternate section as completely eliminating sidewalk construction from the con *136 tract. Plaintiff acted on this interpretation. It made no provision for sidewalk construction in its bid. Though the specifications provided that “Sidewalks shall be of size and location as per site plan” (see contract clause G-06 set out in finding 3(a)), plaintiff never received a site plan. The same clause provided for “b. Build in sockets” which defendant never required plaintiff to install.
The interpretation plaintiff adopted is reasonable. As we said in WPG Enterprises, Incorporated v. United States, 163 Ct. Cl. 1, 6, 323 F. 2d 874, 876-77 (1963) :
* * * As with so many other agreements, there is something for each party and no ready answer can be drawn from the texts alone. Both plaintiff’s and defendant’s interpretations lie within the zone of reasonableness; neither appears to rest on an obvious error in drafting, a gross discrepancy, or an inadvertent but glaring gap; the arguments, rather, are quite closely in balance. It is precisely to this type of contract that this court has applied the rule that if some substantive provision of a government-drawn agreement is fairly susceptible of a certain construction and the contractor actually and reasonably so construes it, in the course of bidding or performance, that is the interpretation which will be adopted — unless the parties’ intention is otherwise affirmatively revealed. Peter Kiewit Sons’ Co. v. United States, 109 Ct. Cl. 390, 418 (1947); First-Citizens Bank & Trust Co. v. United States, 110 Ct. Cl. 280, 310, 76 F. Supp. 250, 266 (1948); Western Contracting Corp. v. United States, 144 Ct. Cl. 318, 326 (1958) ; W. PL. Edwards Eng’r. Corp. v. United States, 161 Ct. Cl. 322, 331-32 (1963) ; Freedman v. United States, 162 Ct. Cl. 390, 400, 320 F. 2d 359, 365 (1963). This rule is fair both to the drafters and to those who are required to accept or reject the contract as proffered, without haggling. * * *
We are, therefore, constrained to accept plaintiff’s interpretation of this contract. The ambiguity of the contract, caused as it was by the deletion in the specifications of the additive alternate section is further supported by the drawings which plaintiff received with the invitation to bid. As pointed out above, defendant followed no one system of designating which sidewalks were additive alternates and *137 which were not. In those drawings the words “additive alternate” were sometimes used with parallel solid lines and sometimes with parallel broken lines. By way of illustration, sheet 8 of the drawings delineates a sidewalk designated an additive alternate in both parallel broken lines and parallel solid lines.
But defendant argues that even if the contract is ambiguous, plaintiff was bound to present the ambiguity to the contracting officer for resolution. Here again this case is similar in some respects to the situation we faced in WPG Enterprises, Inc. supra, where we pointed out (at 6, 323 F. 2d at 877):
* * * Although the potential contractor may have some duty to inquire about a major patent discrepancy, or obvious omission, or a drastic conflict in provisions (see Consolidated Engr. Co. v. United States, 98 Ct. Cl. 256, 280 (1943); Bing Constr. Corp. v. United States, 142 Ct. Cl. 731, 734, 162 F. Supp. 190, 192 (1958); Jefferson Constr. Co. v. United States, 151 Ct. Cl. 75, 89-91 (1960), he is not normally required (absent a clear warning in the contract) to seek clarification of any and all ambiguities, doubts, or possible differences in interpretation. The Government, as the author, has to shoulder the major task of seeing that within the zone of reasonableness the words of the agreement communicate the proper notions — as well as the main risk of a failure to carry that responsibility. If the defendant chafes under the continued application of this check, it can obtain a looser rein by a more meticulous writing of its contracts and especially of the specifications. Or it can shift the burden of ambiguity (to some extent) by inserting provisions in the contract clearly calling upon possible contractors aware of a problem-in-interpretation to seek an explanation before bidding. See Beacon Constr. Co. v. United States, 161 Ct. Cl. 1, 6-7, 314 F. 2d 501, 504 (1963); Guyler v. United States, 161 Ct. CL 159, 168, 314 F. 2d 506, 510-511 (1963) (concurring opinion).
We think that the Special Provisions clause (SP 1-02, supra) in and of itself, is not sufficient to shift the burden of the ambiguity to plaintiff. While that clause does specifically provide that any requirement shown either in the *138 drawings or the specifications must be considered as a requirement of the contract, it does not affect the present situation since ambiguity existed in both the drawings plaintiff possessed and the specifications. In effect then, when the Contracting Officer directed that the sidewalks be built he was invoking the “Changes” clause, and plaintiff should be compensated therefor.
Moreover, in this case, unlike Beacon Constr. Co. v. United States, 161 Ct. Cl. 1, 314 F. 2d 501 (1963), the problem did not arise until after the contract was signed and the parties had already made their agreement. Article 2 of the General Provisions, supra, did not require plaintiff to submit a problem of this type, which arose after signing, to the contracting officer for his binding determination.
Defendant then contends that the Board of Contract Appeals decision was supported by substantial evidence; that it involved a finding of fact which is binding upon us, and that if a question of law was raised the Board’s decision under its findings of fact was correct.
From the foregoing, we think it is clear that the question before the ASBCA was one of contract interpretation, a question of law. Defendant points out that the Board had before it “the entire contract, including the specifications and drawings.” Since this is so, the Board should have found that the contract was ambiguous. Indeed, the Board recognized ambiguity. “The appellant pointed out and the Board agrees that the T’s are not marked as sidewalks or as additive alternate concrete sidewalks,” ASBCA No. 6079 (19 Aug. 1960 at 3). The Board then inferred from an examination of the drawings that plaintiff’s interpretation “would be unrealistic as well as out of harmony with a proper interpretation of the plain language of the specifications as implemented by the drawings.” ibid. The Board apparently felt that, though ambiguity was present, it was sufficiently resolved by an analysis of the surrounding circumstances. But in our examination of the drawings, and other circumstances, we found nothing helpful in resolving *139 the ambiguity. If anything, the drawings serve only to compound the ambiguity. We think the contract as a whole could reasonably be read as plaintiff read it.
Under United States v. Carlo Bianchi & Co. Inc., 313 U.S. 709 (1963), defendant urges us to disregard the de novo evidence taken by the Commissioner and review the ASBCA decision solely upon the facts found by the Board and the underlying administrative record. But the issue presented to us here is a question of law, and not one of fact. And the conclusion of law we adopt here is supported by the record before the Board. But we are not limited to that record in making our determination. Defendant made no objection to the admission of the de novo evidence in this court, and therefore waived that objection. Stein Bros. Mfg. Co. v. United States, 162 Ct. Cl. 802, 337 F. 2d 861 (1963). Further, since the issue before us is one of contract interpretation, it may well be that Bianchi, sufra, does not preclude the admission of de novo evidence necessary to make a factual determination underlying the conclusion of law. Stein Bros. Mfg. Co. supra; WPC Enterprises, Inc. supra; Blake Construction Co. v. United States, 296 F. 2d 393 (CADC 1961). Based on the entire record, we conclude that the Board’s decision was neither based on, nor supported by, substantial evidence, and that plaintiff is entitled to recover.
During the trial, evidence was introduced to show the extent of plaintiff’s damages (see findings 21 through 29). The Commissioner found, and we agree, that plaintiff suffered damages in the amount of $3,232.59. Judgment will be entered for plaintiff in the amount of $3,232.59.
FINDINGS OP PACT
The court, having considered the evidence, the report of Trial Commissioner Paul H. McMurray, and the briefs and argument of counsel, makes findings of fact as follows:
1. Plaintiff is a corporation organized and existing under the laws of Pennsylvania.
2. On June 20, 1958, an invitation was issued to bid for the “Construction of Off-Site Utilities for Title VIII Hous *140 ing ” at McGuire Air Force Base, New Jersey. Attachments to the Invitation, as listed therein, were as follows:
Attachments to this Invitation are as follows:
1. Standard Form 22, Instructions to
Bidders_Pages 1 thru 3
2. Bid Form (Construction Contract)-Pages 1 thru 4
3. Standard Form 23, Construction Contract _Pages 1 and 2
Standard Form 23A, General Provisions _Pages 1 thru 4
Bevisions to General and Special Provisions _Pages 5 thru 6
Additional General Provisions_Pages 7 thru 17
Special Provisions_ Pages 18 thru 24
4. Technical Specifications for Construction of Off-Site Utilities, McGuire Air
Force Base, New Jersey_ Section 1, Sections
5. Schedule “A” Bates of Wages, (Decision A thru I #S-20799 dtd 5 May 1958, Expiring 4
August 1958)_Pages 1 thru 7
6. Schedule “B” Contract Drawings_One Page Only
3. (a) The technical specifications contained in the invitation to bid for off-site utilities at McGuire Air Force Base provided, in pertinent part, as set forth below:

INDEX SHEET

TITLE SECTION PACE NO.

SPECIAL CONDITIONS EXCAVATION, TRENCHING AND BACKFILLING FOR UTILITIES SYSTEMS 1 A-l to A-8 A A-l to A — 4
SEWERS, SANITARY, GRAVITY STORM DRAINS B C B — 1 to B — 6 C-l to C — 7
WATERS LINES, SUPPLY LINES AND DISTRIBUTION SYSTEMS D D — 1 to D-10
CLEARING AND GRUBBING E E-l to E-2
GRADING F F-l to F-6
ROAD PAVING G G — 1 to G-6
EXTERIOR ELECTRIC H H-l to H — 11
LANDSCAPING I 1-1 to 1-11
EOAD PAVING

G-01. SCOPE:

a. Work Included: This section includes street, driveway and parking area pavements, other site surfacing, curbing, walks, and all other surface improvements apart from buildings, except as follows:
*141 b. Do not include the work covered by “on-site” paving.
c. Note that no work beyond the project limits, as shown on Site Plans, is to be included. Roads, Gutters and Walks require [sic] beyond project limits are to be supplied under the Off-Site Project all as shown on the drawings.
d. Coordination-. The work specified in this section shall be coordinated carefully with General Landscaping and with overhead and underground utility work covered by other sections.
* * * * *

G-08. SIDEWALKS:

a. Sidewalks shall be of sizes and locations as per site plan. Prepare sub-base of 4" gravel to proper grades and pitches for walks. Lay 1:2:4 mix gravely or stone concrete 4" thick and after setting, finish off with proper edging tools and floats. Provide full depth expansion joint or steel patent form across the walk every SO" filled with sand; after concrete is set, remove sand and fill with expansion joint mastic. Concrete to be mixed and of materials as specified herein.
b. Build in sockets for drying reels and install tile drains under walks where shown on plans.
* tji # * *
ADDITIVE ALTERNATE CONCRETE SIDEWALK
SCOPE: The work covered by this section of the specifications consists in furnishing all plant, labor, equipment, appliances, and materials, and in performing all operations in connection with the construction of port-land cement concrete sidewalks in off-site areas complete as specified in Section 27 and Additive Alternate No. 3 of the On-Site Specifications, in strict accordance with the sections of the specifications and the applicable drawings.
(b) The specifications for on-site work for McGuire Air Force Base provided, in pertinent part:
SECTION 27
ROAD PAVING

27-Ü1. SCOPE:

a. Workmcluded. This section includes street, driveway and parking area pavements, other site surfacing, *142 curbing, walks, and all other surface improvements apart from buildings except as follows:
b. Do not include the work covered by the following Sections: Numbers 21 through 26 inclusive and 29.
c. Note that no work beyond the project limits, as shown on Site Plans, is to be included. Roads, gutters and walks required beyond project limits are to be supplied under the Off-Site Project, all as shown on the drawings.
d. Coordination. The work specified in this section shall be coordinated carefully with General Landscaping and with overhead and underground utility work covered by other Sections.
# sf: jH ❖ ❖

2,7-06. SIDEWALKS:

a. Sidewalks shall be of sizes and locations as per site plan. Prepare sub-base of 4" gravel to proper grades and pitches for walks. Lay 1:2:4 mix gravel or stone concrete 4" thick and after setting finish off with proper edging tools and floats. Provide full depth expansion joint or steel patent form across the walk every 5'0" filled with sand; after concrete is set, remove sand and fill with expansion joint mastic. Concrete to be mixed and of materials as specified herein.
b. Build in sockets for drying reels and install tile drains under walks where shown on the plans.
# $ $ $ #
ADDITIVE ALTERNATE NO. 3 CONCRETE SIDEWALKS
1. SCOPE: The work covered by this section of the specifications consists in furnishing all plant, labor, equipment, appliances, and materials, and in performing all operations in connection with the construction of portland-cement-concrete sidewalks, complete, in strict accordance with this section of the specifications and the applicable drawings.
2. CONCRETE: * * *
3. SUBGRADE PREPARATION: * * *
4. FORMS: * * *

5. CONCRETE PLACEMENT AND FINISHING: * * *

6. EXPANSION JOINTS: * * *
7. CURING AND PROTECTION: * * *
*143 (c) The invitation also contained an attachment listed as “6. Schedule ‘B’ Contract Drawings — One Page Only.”
(d) The striking out and the insertion of the word “DELETE” on the index sheet of the technical specifications for construction of off-site utilities at McGuire Air Force Base, New Jersey, were upon the copy furnished plaintiff by defendant.
4. Plaintiff’s bid was prepared by Mr. Jay Aster, president of Wingate Construction Company. Mr. Aster has a degree in civil engineering and has been in the construction business since 1946. The bid submitted by plaintiff did not include an estimate for the construction of concrete sidewalks.
5. On July 30,1958, contract No. AF ll(626)-64 for the installation of off-site utilities at McGuire Air Force Base was entered into between plaintiff and defendant. The technical specifications accompanying the invitation to bid, set out in finding 3, were incorporated into this contract. In addition, the contract contained the following provisions, among others:
GENERAL PEO VISIONS[1]
$ $ $ $ $
2. SPECIFICATIONS AND DRAWINGS
The Contractor shall keep on the work a copy of the drawings and specifications and shall at all times give the Contracting Officer access thereto. Anything mentioned in the specifications and not shown in the drawings, or shown on the drawings and not mentioned in the specifications, shall be of like effect as if shown or mentioned in both. In case of difference between drawings and specifications, the specifications shall govern. * * *
SPECIAL PROVISIONS
H« H: H* H* ❖
SP 1-02 SCOPE OF WORK
All work which is manifestly necessary to carry out the intent of the drawings and specifications or which is customarily performed for such work shall be performed by the contractor. Any requirement shown on the drawings, but omitted from the specifications, or any requirement shown in the specifications but omitted from the *144 drawings shall be considered as being required under the contract as if set forth in both. Any change in drawings or specifications directed by the Contracting Officer shall be made in acccordance with the clause hereof entitled “Changes.”
6. An additive alternate is an item which is desirable but not essential; it is usually omitted as a contract item because of a fund limitation. If money is subsequently found to be available, the item may then be added to the contract.
7. The sidewalk construction in dispute is a T-shaped area. The top of the “T” connects either two or three concrete sidewalks leading from the on-site dwelling units at the project boundary line. Plaintiff inspected the off-site area before construction was begun and knew that the disputed sidewalks were to be installed in the off-site area so as to connect the dwelling units with the street.
8. Plaintiff’s interpretation of the specifications was that the deletion of the additive alternate providing for the concrete sidewalks completely eliminated any requirement on plaintiff’s part to build concrete sidewalks. Defendant contends that the deletion of the additive alternate providing for sidewalks only eliminated the requirement that plaintiff build those sidewalks which were additive alternates and the off-site drawings contained a requirement for sidewalks which were not additive alternates. Defendant contends that additive alternate sidewalks were illustrated by broken lines, and sidewalks required by the contract were illustrated by solid lines.
9. The contract drawings are a series of 16 sheets. Sidewalks appear on sheets 5, 6, 7, 8, 9, 10, 11, 13, and 14. The areas designated as sidewalks are shown either by parallel solid lines or a series of parallel broken lines. On sheet 5, the area designated as a sidewalk is shown as parallel solid lines, and is referred to variously as a “new 5'0" cone, sidewalk” and a “new 5'0" cone, sidewalk (additive alternate)”. Sheets 6, 7,10', 11,13, and 14 show part of the sidewalk area as parallel broken lines and part as parallel solid lines. Sheet 8 shows a portion of the sidewalk designated “additive alternate,” as both a series of parallel broken lines and as *145 of a sidewalk designated as “concrete sidewalk, additive alternate,” as both a series of parallel broken lines and as parallel solid lines. Sheet 9 also shows a concrete sidewalk as parallel solid lines.
10. In a letter dated November 18, 1958, plaintiff wrote the contracting officer as follows:
In further pursuance to our telephone conversation of this morning, we want to speed up the progress of the job in order to substantially complete our work before winter. A prompt decision on the following questions will greatly help us:
F. Directive on how to proceed with additive sidewalk item.
‡ ‡ ‡ ‡
11. On December 2, 1958, defendant replied to plaintiff’s letter of November 18,1958, as follows:
With reference to the above mentioned letter I believe tha,t most subjects were discussed and resolved to the satisfaction of all parties at a meeting held in this office on 26 November 1958. However, I will attempt to answer your questions in the order in which they were asked, to prevent any misunderstanding.
$ $ $ $ $
F. SIDEWALK ADDITIVE ALTERNATE: A discussion of this matter was forwarded to Headquarter MATS on 19 November 1958. As of this date, no decision on this subject has been received at this office.
I trust that these matters were resolved to your satisfaction.
12. Plaintiff never received a site plan which provided for sidewalks, and never received from defendant a copy of Specifications for On-Site Work. Section G-06 of the off-site specifications contains the only reference to Site Plan in the Off-Site Specifications. Plaintiff did receive a set of the drawings from defendant prior to bidding on the contract. A site plan and a drawing are not synonomous.
13. Section G-06b of the Specifications (see finding 3) provided for building in sockets for drying reels and installing tile drains under walks where shown on the plans. *146 The sockets and tile drains were not required to be put in by the plaintiff.
14. On October 30, 1958, plaintiff wrote the contracting officer the following:
We wish to submit the following sub-contractors for approval on the above listed project as per our telephone conversation:
MANEOLE SUBCONTRACTOR—
Joseph Liberati State Ed. &
Penna. R.B..
Upper Darby, Penna.

CONCRETE CURBS & SIDEWALKS—

Amil D. Mancini 5428 N. Front Street.
Philadelphia 20, Pa.
15. On April 3, 1959, plaintiff wrote the contracting officer, informing him that plaintiff did not believe any sidewalk constructing was required by the contract. The contracting officer replied on July 31,1959, as follows:
1. You are hereby directed to proceed diligently and without any further delay of that portion of work under subject contract, as indicated on the site plans and included in specifications section G-06, entitled “SIDEWALKS.” This determination is rendered in connection with objections previously raised concerning “additive alternate.” This portion of work, covered by above-referenced documents, is determined to be within present scope of work under subject contract.
2. In view of anticipated site changes, you are instructed to contact Lt. Billhardt, Administrative Contracting Officer, concerning proposed deletion of a portion of said sidewalks.
16. On August 6,1959, plaintiff wrote the contracting officer and again set forth its view that the work was not included in the contract. Plaintiff also advised the contracting officer that work was proceeding on the installation of sidewalks as directed.
*147 17. On August 10, 1959, plaintiff wrote the contracting officer:
Reference is made to your directive of July 31, 1959 on the above subject project to proceed at once to construct sidewalks on the off-site Project.
We are proceeding at once to carry out your directive.
Our action in response to your directive does in no way prejudice our position that no sidewalks are included in the off-site contract.
0t * # aft *
We request that your decision that certain sidewalks are included in the contract be referred for further review, and we will submit a following claim for the additional work involved in this directive.
18. Plaintiff did construct the sidewalks which were shown on the drawings as enclosed by solid lines as directed by the contracting officer. On September 18, 1959, plaintiff wrote to the contracting officer informing him that the sidewalks were completed, and enclosed a claim of additional compensation for sidewalk installation in the sum of $4,684.21.
19. Thereafter, on December 21, 1959, plaintiff appealed to the Armed Services Board of Contract Appeals from the decision of the contracting officer that the sidewalks installed were included under the contract. The Board heard testimony and oral argument on May 20, 1960. On August 19, 1960, the Board rendered its decision denying plaintiff’s claim for extra compensation on the ground that the sidewalks in the off-site area which the contracting officer directed installed were required by the contract.
20. The contract between plaintiff and defendant for the construction of off-site utilities was ambiguous with regard to the construction of the contested sidewalks. Plaintiff’s interpretation of the contract was reasonable. The contract did not require the installation of sidewalks in the off-site area. A contrary determination by the ASBCA is not supported by substantial evidence.
21. If the court should adopt finding 20, it would then be necessary to ascertain the amount of recovery to which plaintiff is entitled. Plaintiff submitted a claim of $4,684.21 to the contracting officer and the Armed Services Board of *148 Contract Appeals. Plaintiff has filed a petition in this court for $4,684.21. Under the schedule of damages presented pursuant to Rule 28(b) of this court, plaintiff has claimed damages of $4,426.18. During the trial, plaintiff increased its claim to $5,342.02, later filing an amended petition claiming that amount. It is the defendant’s contention that, if any damages are properly allowable, the amount should not exceed $1,515.91.
22. In presenting the original claim for $4,684.21, plaintiff submitted a cost breakdown as follows:
CONSTRUCTION OP ADDITIVE SIDEWALKS
LABOR
m
81. 25 Labor LO CO CO
78. 75 lo CO M
18. 30 lo CO 02
203. 50 IQ <1 ^ CO
53. 55 LO to H-to
737. 45 $1, 892. 80 IQ CO o l — I CQ
380. 63 EQUIPMENT Gradall cn iH <N
52. 00 432. 63 Truck 00
MATERIAL
42. 00 Lumber to CO
340. 00 Gravel
712. 40 Concrete to
22. 00 1,116. 40 Curing pound
Overhead 15% 516. 27
03 co H-4 O rH
to oo CO tO 00 CO to Ox S3 fed o
3, 441. 83
CO ox ©
4, 637. 83
Bond 1 % 46.38
Total 4, 684. 21
23. When plaintiff moved to amend the petition to increase the amount claimed to $5,342.02, a cost schedule was submitted as follows:
Labor from August 6 to 21,1959_ $2, 049.98
Expenses of employees_ 140.60
Workmen’s Compensation at $1.55 per $100 payroll and Contractor’s liability at $.616 per $100 payroll, or payroll of $2,049.98 x $2.166_ 444.03
*149 Payroll taxes:
Federal Insurance Contrib. Act- .025%
Unemployment Compensation- .027
Federal Unemployment_ .003
Payroll $2,049.98 x .055 112. 75
Material — Concrete and Gravel- $689. 70
Material — Lumber 3,000 board feet at $0.12 per foot— 360.00
Equipment rental_ 654.63
4,451. 69
Overhead at 8%_ 356.13
Total costs_ 4,807.82
Profit at 10% of total bill_ 534. 20
Total _ 5,342.02
24. Defendant’s cost analysis of plaintiff’s construction of the sidewalks is as follows:
Labor _ $525.26
Workmen’s Compensation 2.166% of labor expense_ 11.38
Payroll Taxes, .055% of payroll- 2. 89
Material — Concrete and Gravel- 654.16
Material — Lumber - 45.00
Equipment rental_ 164.00
1,402. 69
Overhead, 8%_ 112.22
Total Cost_1,514. 91
25. (a) In performance of work incident to the construction of a sidewalk, plaintiff used a Mack dumptruck on August 18, 1959, and incurred an expense of $45. Since plaintiff completed the sidewalk construction on August 18, no cost incurred by the use of this truck after that date is included.
(b) Plaintiff used a Gradall in ditching out the necessary area for the sidewalk on August 13 and 14,1959, and incurred an expense of $290 in doing that work. The plaintiff claims rental allowance for August 12, but, since the Gradall was not used in connection with sidewalk construction on that date, no amount is included for August 12,1959.
(c) Plaintiff used a backhoe on August 17 and 18, 1959, in connection with the construction of sidewalks and incurred rental expenses of $70 per day plus $10 charge for *150 hauling the machine to and from the job site, for a total of $160. Plaintiff claims an additional $35 for 4 hours’ rental of the backhoe on August 19, 1959. That item has been eliminated, since the record indicates that the sidewalk was completed on August 18,1959.
26. (a) It is established by the proof that plaintiff incurred costs for concrete and gravel amounting to $689.70.
(b) Plaintiff incurred costs for lumber amounting to $45. Plaintiff used 3,000 board feet for concrete forms in sidewalk construction. The lumber cost 15 cents per board foot new, and was purchased by plaintiff for a separate bridge project on which plaintiff was contractor. Since this type of lumber could normally be used about ten times for preparation of concrete forms, its cost should be pro-rated, notwithstanding the fact that in this instance plaintiff did not re-use the lumber.
27. (a) Labor for the construction of the sidewalks is shown to have been $1,385.16, based on plaintiff’s payroll records for the period between August 6 and August 18,1959, when the sidewalks were built.
(b) Based on allowable salaries and wages plaintiff expended a pro-rata amount of $30 for workmen’s compensation ($1.55 per $100 payroll) and contractor’s liability ($0,616 per $100 payroll) is considered appropriate.
(c) Plaintiff incurred pro rata payroll taxes on the allowable salaries for Federal Insurance Contributions Act (.025 percent), unemployment compensation (.027 percent), and Federal Unemployment Tax Act Contribution (.003 percent) . These amount to a total tax rate of .055 percent, and a resulting allowable tax of $76.18.
28. If it is found that plaintiff is entitled to recover, plaintiff would be entitled to an 8-percent overhead expense on the foregoing allowable expenses of $2,721.04 which would be $217.68. This results in a total expense of $2,938.72. Computed at 10 percent, the profit amounts to $293.87.
*151 29. If it is determined that plaintiff is entitled to recover, the amount would be $3,232.59, as set forth below:
Mack Dumptruck_ $45.00
Gradall_.,_ 290.00
Baekhoe _ 160.00
Concrete and gravel_ 689.70
Lumber_ 45. 00
Labor _ 1,385.16
Workmen’s comp., etc- 30.00
Payroll Taxes- 76.18
Overhead @ 8%- 217.68
Profit @ 10%_ 293.87
Total_ 3,232.59
CONCLUSION OF LAW
Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes as a matter of law that plaintiff is entitled to recover in the amount of $3,232.59, and judgment is entered to that effect.

 Contained In Standard Form 23A.