**MONROE M. TAPPER & ASSOCIATES**

v.

**The UNITED STATES.**

**No. 329–70.**

United States Court of Claims.

July 18, 1979.

F. Trowbridge vom Baur, Washington, D. C., attorney of record, for plaintiff; W. Bruce Shirk, Washington, D. C., of counsel.

R. W. Koskinen, Washington, D. C., with whom was Asst. Atty. Gen., Barbara Allen Babcock, Washington, D. C., for defendant.

Before COWEN, Senior Judge, and KUNZIG and SMITH, Judges.

## ON CROSS MOTIONS FOR SUMMARY JUDGMENT

KUNZIG, Judge:

This Wunderlich Act case,[1] previously the subject of two opinions by this court,[2] comes before us on the parties' cross-motions for summary judgment. The suit concerns plaintiff's contention that it is entitled to an equitable adjustment in connection with a contract to construct a Post Office facility in Worcester, Massachusetts. Defendant, however, asserts the contract in question was patently ambiguous thus imposing on plaintiff a duty to seek clarification of the contract's provisions which it failed to do. Plaintiff's failure so to inquire, contends the Government, prevents any recovery in this case.

Since we find the contract in question to be free from any patent ambiguity, as explained *infra*, we hold in favor of plaintiff.

Under the contract that is involved in the present case, the plaintiff, Monroe M. Tapper and Associates (Tapper), agreed to construct a Post Office and Vehicle Maintenance facility in Worcester, Massachusetts, according to plans and specifications prepared by the then Post Office Department (now the Postal Service), and to lease the completed structure to the Department for a specified term. Tapper thereafter subcontracted to a builder in Worcester, Granger Constructing Co., Inc. (Granger), the entire job of constructing the facility.

The Post Office Department engaged the Worcester architectural firm of C. W. Buckley, Inc. (Buckley), as the architect-engineer to supervise the construction of the facility.

The contract contained the usual disputes provision, which (among other things) gave the "Lessor," *i. e.*, Tapper, a 30-day period within which to appeal in writing to the Postmaster General from a final decision rendered by the contracting officer (CO) on a dispute arising under the contract.

During the construction of the facility in Worcester, a controversy arose in September 1968 between Granger (the subcontractor) and Buckley (the architect-engineer) over the question of whether the contract specifications permitted the use of excavated earth in backfilling trenches for utility lines (as contended by Granger), or required the use of gravel for this purpose (as contended by Buckley). The matter was referred to the CO for a determination; and that official, in a communication dated December 23, 1968, and addressed to Tapper (the contractor), determined that the specifications required the use of gravel in backfilling utility trenches.

An appeal from the CO's determination was signed by Tapper at the request of Granger, was mailed to the Postmaster General on February 25, 1969, and was received by the Post Office Department on February 26, 1969.

Tapper's appeal was then referred to the then Post Office Department Board of Contract Appeals for disposition. In a decision dated April 23, 1970, and reaffirmed on August 28, 1970, the Board dismissed the appeal on the ground that it had not been taken within the 30-day time limit prescribed by the contract.

On October 1, 1970, Tapper filed a petition in this court, asking for a review under the Wunderlich Act (41 U.S.C. §§ 321, 322) of the action by the Board in dismissing the appeal from the CO's determination. Tapper and the Government filed cross-motions for summary judgment.

In a decision dated April 14, 1972 (458 F.2d 66, 198 Ct.Cl. 72), this court held that there was administrative authority to waive the 30-day time limit for the taking of an appeal from the CO's determination; and the court suspended the judicial proceeding "pending plaintiff's further pursuit of its administrative remedy through a possible

1. 41 U.S.C. §§ 321, 322 (1976).

2. *Monroe M. Tapper & Associates v. United States*, 458 F.2d 66, 198 Ct.Cl. 72 (1972); *Monroe M. Tapper & Associates v. United States*, 514 F.2d 1003, 206 Ct.Cl. 446 (1975).

discretionary waiver * * * of the contractual time-limit."[3]

The Post Office Department having been converted into the Postal Service, an administrative hearing was held before the Postal Service Board of Contract Appeals on the question of whether to waive the 30-day time limit in the present instance. The Board, on September 7, 1972, decided that a waiver was not warranted.

In a decision dated March 19, 1975, 514 F.2d 1003, 206 Ct.Cl. 446, this court held that, under the facts of the present case, the refusal by the Postal Service Board of Contract Appeals to waive the contractual 30-day time limit constituted arbitrary action and was an abuse of discretion. The court remanded the case to the Postal Service Board of Contract Appeals, with instructions to decide, on the merits, whether the contractor was entitled to additional compensation and, if so, the amount of such compensation, because of the requirement that gravel be used in backfilling trenches for utility lines.

The Postal Service Board of Contract Appeals conducted a hearing pursuant to the remand; and thereafter, on July 14, 1977, the Board rendered its decision on the merits of plaintiff's claim. The Board held that the contract specifications, properly construed, required the use of gravel, and did not permit the use of excavated earth, in backfilling utility trenches; and, accordingly, that the plaintiff was not entitled to an equitable adjustment because of the CO's requirement that gravel be used in backfilling utility trenches.

As Granger (the subcontractor) in the meantime had complied with the CO's determination and had used gravel in backfilling utility trenches, the Board of Contract Appeals proceeded to make a factual determination regarding the amount to which the contractor would be entitled as an equitable adjustment if the court should disagree with the Board's decision on the matter of entitlement, and should hold that the contract specifications permitted the use of earth in backfilling trenches for utility lines.[4]

Thereafter, plaintiff timely brought suit in this court.[5]

The primary question to be decided by the court is whether the contract specifications permitted the use of excavated earth in backfilling utility trenches (as contended by plaintiff), or required the use of gravel for this purpose (as contended by defendant).

■ Before we begin our discussion of the parties' arguments, a word on the scope of the court's review is in order. This is a Wunderlich Act case; therefore, our review is limited. However, when the questions for review are those of law, as in this case, the court has the duty independently to review the decision of the administrative board which first passed on the issues. *Timber Access Industries Co. v. United States*, 553 F.2d 1250, 1253, 213 Ct.Cl. 648, 654 (1977); *Anthony Grace & Sons, Inc. v. United States*, 345 F.2d 808, 819–20, 170 Ct.Cl. 688, 707 (1965), *rev'd on other grounds*, 384 U.S. 424, 86 S.Ct. 1539, 16 L.Ed.2d 662 (1966); *Wingate Construction Co. v. United States*, 164 Ct.Cl. 131, 139 (1964).

Plaintiff contends that the contract is not ambiguous and that the specific provision in the contract providing for backfilling utility trenches with earth should control over other provisions that are more generalized in nature. Defendant, of course, argues that the contract is patently ambiguous and that plaintiff was under a duty to seek clarifica-

---

**3.** The April 14, 1972, decision was rendered before 28 U.S.C. § 1491 was amended in 1972 so as to authorize the court to remand appropriate matters to administrative agencies with such directions as the court may deem to be proper and just.

**4.** The Board found that if plaintiff should prevail, it would be entitled to $26,805.94.

**5.** Following the Board's decision of July 14, 1977, in this case, it was referred to a trial judge, who submitted a recommended opinion in which he agreed with the Board's decision. We are unable to concur with the trial judge's reasoning and his recommended opinion.

tion from the Government, *Space Corp. v. United States*, 470 F.2d 536, 538, 200 Ct.Cl. 1, 5 (1972); *Beacon Constr. Co. v. United States*, 314 F.2d 501, 504, 161 Ct.Cl. 1, 7 (1963).

Since plaintiff failed to seek clarification before bidding on the patently ambiguous contract, continues the Government, plaintiff is precluded from claiming the benefit of the doctrine of *contra proferentem, i. e.*, that ambiguity in a Government contract will be construed against the Government as drafter of the instrument. *Space Corp. v. United States, supra*, 470 F.2d 536, 200 Ct.Cl. at 5; *Beacon Constr. Co. v. United States, supra*, 314 F.2d 501, 161 Ct.Cl. at 7.

Although we recognize the problem under these facts is a close and difficult one, after careful analysis we hold for plaintiff.

The applicable contract language which strikes to the heart of the case is:

**SECTION 0255—SITE UTILITIES**

4. WORKMANSHIP

   \*    \*    \*    \*    \*    \*

I. Backfilling: Backfill trenches only after piping has been inspected, tested (if water) and locations of pipe and appurtenances have been recorded, backfill by hand around pipe and for a depth of one foot above the pipe; *use earth without rock fragments or large stones* and tamp firmly in layers not exceeding 6 inches in thickness, taking care not to disturb the pipe or injure the pipe coating. Compact the remainder of the backfill thoroughly with a rammer of suitable weight or with an approved mechanical tamper, or if the soil is granular by flooding, provided that under pavements, walks and other surfacing, the backfill shall be tamped solidly in layers not thicker than 6 inches. Exclude all cinders and rubbish from trenches in which metal pipes are laid (emphasis added).

This section, entitled *Site Utilities*, and subtitled *Backfilling*, specifically details how backfilling utility trenches is to be accomplished. Moreover, it unequivocally states that earth without rock fragments is to be used to accomplish the task.

Defendant, in its attempt to highlight the ambiguous nature of the contract, first points to Section 0220 which reads:

**SECTION 0220—EARTHWORK**

3. MATERIALS

   \*    \*    \*    \*    \*    \*

C. Materials for Filling: All backfills and fills for the building, retaining walls, walks, roads and other surfaced areas from grades existing after removal of overlying materials shall be made with gravel (except lawns and planting areas).

Defendant argues that the phrase "all backfills," properly construed, is meant to include backfills for utility trenches. Since the section requires gravel to be used in such a process, defendant contends this creates a patent or glaring ambiguity between Section 0255 (requiring earth to be used) and Section 0220 (requiring gravel to be used). We disagree. Section 0220 refers specifically to backfills for the building, retaining walls, walks, roads, and other surfaced areas existing after removal of overlying materials. Nowhere is reference made to site utilities. It is an established rule of contract interpretation that where several subjects of a class or group are enumerated and there are no general words to show that other subjects or items are included, it may reasonably be inferred that the subjects or items not named were intended to be excluded. *3 Corbin on Contracts*, § 552 (1960) at 206. Had the Government, as drafter of the contract, wanted Section 0220 to apply as well to site utilities, it easily could have made such an intention known. By the failure to so specify, it is reasonable to conclude that Section 0220 had no applicability to utility trenches. As such, we find no ambiguity to exist between Section 0255 (requiring earth to be used) and Section 0220 (which, by its own terms, does not apply to site utilities).

Defendant next attempts to raise the specter of a patent ambiguity by pointing to Section 0220 dealing with workmanship:

4. WORKMANSHIP

   \*    \*    \*    \*    \*    \*

D. EXCAVATION

   \*    \*    \*    \*    \*    \*

(6) Do all excavation within the building area and for utilities such as water lines, underground electrical lines, sanitary lines, storm water lines, catchbasins, and manholes. *Refer to site utilities section for more detailed information* (emphasis added).

\*   \*   \*   \*   \*   \*

### E. BACKFILLING

(1) Do all backfilling with selected granular material specified properly compacted. Excavated material on the site, if gravel and free from loam, sticks, rubbish, and other foreign matter, may be used, if it meets the specified requirements but if the quantity is insufficient or the quality unsuitable for the particular purpose for which it is intended then the specified gravel shall be provided.

We find, however, that this section of the contract is of little avail to defendant. First, subsection (6) refers the contractor to the site utilities section which, as earlier discussed, specifically permits the use of earth in backfilling utility trenches. This merely reaffirms the reasonable interpretation of plaintiff that Section 0255 is the controlling part of the contract under which backfilling utility trenches is to be accomplished.

Next, Section E, entitled "Backfilling" provides that all backfilling is to be done with "selected granular material" and that "excavated material on the site, if gravel and free from loam, sticks, rubbish, and other foreign matter, may be used . ."

Plaintiff argues that the phrase "if gravel and free from loam" should be read as "if gravel *or* free from loam" in order to give a reasonable meaning to this part of the contract.

■ At the outset, we note that it is well established that in construing provisions of a contract, a court is under a duty to give a "reasonable meaning to all parts of the instrument rather than leaving a portion of it useless." *ITT Arctic Services, Inc. v. United States*, 524 F.2d 680, 684, 207 Ct.Cl. 743, 751–52 (1975). As a corollary to the

above, it is well established the word "and" should be read as "or" if the contract so indicates. *See Words and Phrases*, Vol. 3, pp. 577–612.

■ With this perspective in mind, we turn to the applicable contract language. First, if the excavated material is gravel, it is self identifying and would be free from loam, sticks, rubbish and other foreign matter. Thus, use of the word "and" renders the rest of the sentence surplusage. Additionally, the clause "but if the quantity is insufficient or the quality unsuitable for the particular purpose for which it is intended, then the specified gravel shall be provided" necessarily refers more to "excavation material" rather than to gravel. The insertion of the word *or* in this particular provision is in harmony with other provisions of the contract and avoids any conflict or ambiguity.

As a final point, the Government refers to Section 0255, subsection (5) which reads:

5. SITE UTILITIES

A. Water lines: Excavation, installation and backfilling for water lines within the street and up to the property line shall be done by the City of Worcester Water Department and the cost of same shall be charged to the Contractor. Excavation and backfill for water lines within the property lines shall be done under Section 0220, Earthwork.

B. Sanitary lines: Excavation, installation and backfilling for sanitary lines within the street to the property line shall be the responsibility of the plumbing contractor. The installation of this line within the street shall be done by a licensed drain layer. The installation of sanitary lines within the property lines shall be done by the plumbing contractor and excavation and backfilling for sanitary lines within the property line shall be done under Section 0220, Earthwork.

C. Storm water lines: Excavation, installation, and backfilling for storm water lines from a point 5'-0" outside the building foundation wall to the street connection and including the street connection shall be the responsibility of the

Contractor and done under section 0220. The installation of this line within the street shall be done by a licensed drain layer.

D. Underground electrical, telephone, and fire alarm lines: Excavation and backfill for the underground electrical, intercom, telephone, and fire alarm lines shall be done under section 0220, Earthwork. Also excavation and backfilling for underground cables or conduit to walk lights, etc., shall be done under this same section, 0220.

The Government asserts that by referring the contractor back to Section 0220, this in essence creates an ambiguity between the two sections because in Section 0220 the use of gravel is required for all backfills. However, as discussed *supra*, that section does not refer to site utilities; rather it applies only to fills for the buildings, retaining walls, walks, roads, and other surfaced areas from grades existing after removal of overlying materials. As a result, the reference back from Section 0255 to Section 0220 is not in conflict with other sections of the contract.

As a final observation, we would note that the total contract price for the project involved here is $4,830,000. Plaintiff's claim is for $26,805. If there be any ambiguity whatsoever (and we have found none) its insignificance is noted by comparing the $4,830,000 with the $26,805 claimed. The enormous difference is illustrative of the overall unimportance of this backfill item relating to utility trenches. *Mountain Home Contractors v. United States*, 425 F.2d 1260, 192 Ct.Cl. 16 (1970).

In summary, the court is here presented with a contract containing a detailed section entitled *site utilities* which specifically details how backfilling is to be accomplished, *i. e.*, with earth. We have other provisions of the contract which do not mention site utilities and only refer to the use of gravel in backfilling in specific cir-

cumstances. It is clear that the contract, viewed as a whole, is not ambiguous in regard to the backfilling of utility trenches. We therefore hold that the Board's decision construing the contract in question to require, as a matter of law, gravel (rather than earth) in backfilling utility trenches, was in error and reverse.

Since the Board, in the event we disagreed with its decision, went ahead in the interests of judicial economy and decided that if plaintiff prevailed it would be entitled to $26,805.94 as an equitable adjustment, we adopt such a determination.[6]

Accordingly, upon careful consideration of all the parties' submissions, and after hearing oral argument, defendant's motion for summary judgment is denied and plaintiff's motion for summary judgment is granted. Judgment is entered for plaintiff in the amount of $26,805.94.

---

6. Plaintiff's motion to file a supplemental memorandum concerning the applicability of the Contract Disputes Act of 1978, Pub.L.No.95–563, 92 Stat. 2383, in regard to interest on plaintiff's claim, was denied without prejudice on April 16, 1979. Plaintiff is, of course, now free to reinstate such a motion.