Contracts; amendment of petition changing character of claim; summary judgment; disputed issues of material fact; timber cutting contract; estimated quantities; disclaimer; industry practice. — On July 18, 1980 the court entered the following order:
Before Kashiwa, Judge, Presiding, Kunzig and Bennett, Judges.
This suit involves a contract, No. 018583, for the sale of standing timber by defendant acting through the United States Forest Service, Department of Agriculture. We have before us the parties’ cross-motions for summary judgment under Ct. Cl. Rule 101 and plaintiffs motion to amend the petition and defendant’s opposition thereto. The motion to amend the petition is allowed. However, we hold that there are disputed material issues of fact and so remand the case to the trial division.
*741 On September 26, 1975, plaintiff was awarded a contract to cut and remove certain standing timber in the Umpqua National Forest in the Tiller Ranger District, State of Oregon. This was known as the Goolaway sale. Logging is to be completed by December 31, 1980. The contract provides for a price per thousand board feet of merchantable timber removed from contract designated areas rather than a lump sum price for all designated timber whatever its volume or grade. The contract also requires that all disturbed timber, whether or not merchantable, must be removed by helicopter. All unutilized material harvested on the sale has to be piled at designated locations.
Before award of the contract, bidders were given a prospectus describing the sale. The introduction to the prospectus states:
This prospectus is to furnish sufficient information in addition to that contained in the published advertisement to enable prospective bidders to decide whether further investigation of the sale is warranted, information GIVEN HERE OR OTHERWISE PROVIDED IS NOT A PART OF THE CONTRACT UNLESS STATED THEREIN. DETAILED CONDITIONS OF SALE ARE CONTAINED IN THE SAMPLE TIMBER SALE CONTRACT. IN THE EVENT A CONTRADICTION EXISTS BETWEEN THIS PROSPECTUS AND THE SAMPLE CONTRACT, THE contract governs. Timber Sale Contract, Form 2400-6, will be used. Sale area and sample contract should be inspected before submitting a bid. The appraisal, and other information on the timber, conditions of sale and bidding may be obtained at Forest Service offices named in the attached advertisement. [Capitals in original.]
The prospectus also contained estimates of the quantity of timber available. Along with the estimates there was the following language:
The quality, size, and age class of the timber are estimates based on detailed cruise information on file and available for inspection at the Forest Service offices listed in the advertisement, information listed herein is MADE AVAILABLE WITH THE UNDERSTANDING THAT VALUES SHOWN ARE NOT ESTIMATES OF A PURCHASER’S OWN RECOVERY AND ARE NOT A PART OF THE TIMBER SALE contract. For these reasons bidders are urged to examine the timber sale area and make their own recovery estimates. [Capitals in original.]
*742 Nevertheless, the estimates of the timber quantities were made a part of the contract in section A2. The contract also contains a standard provision in clause B2.4, which says, "the estimated volumes stated in A2 are not to be construed as guarantees or limitations of the timber volumes to be designated for cutting under the terms of this contract.”
Plaintiff claims that it has logged part of the areas under the contract and made its own estimates of the amount of merchantable timber remaining unlogged. Plaintiff now alleges that the Forest Service grossly overestimated the amount of timber available. It did this, plaintiff claims, primarily for two reasons: (1) the Forest Service overestimated the acreage involved, and (2) it underestimated the defect rate. The defect rate here assailed was an assessment of the timber in terms of how much defective material and how much merchantable timber would be yielded by logging. The higher the defect rate, the lower the amount of merchantable timber. Defect rates before logging are by their nature estimates since the actual defect rate can only be known after the timber is logged. If the Forest Service did underestimate the defect rate, then plaintiff would recover less merchantable timber and would incur higher costs in collecting and piling defective material than it might have anticipated. Plaintiff claims that it will be unable to recover even its operating costs on this contract and so brings this suit.
We consider first plaintiffs motion to amend its petition. As the petition now stands, it asserts a count for breach of an implied warranty as to the amount of merchantable timber and a count for negligent misrepresentation of the amount of merchantable timber. The motion to amend would change the negligent misrepresentation count to a claim for reformation based on mutual mistake as to the amount of timber available. Since essentially the same circumstances are involved, and given the liberality of the amendment rules, the motion to amend should be granted. Ct. Cl. Rule 39(a). Defendant’s objection is largely that the motion to amend comes so late that defendant is prejudiced in its motion for summary judgment. However, the parties did brief the mutual mistake issue in support of their summary judgment motions and since we feel the case *743 should be remanded to the trial division in any event, we do not find there is such prejudice to defendant, if any, as to warrant denying the motion.
Turning to the summary judgment motions, it is defendant’s position that any warranty regarding estimated timber quantities was fully disclaimed by the above-quoted language in the contract and prospectus. Defendant also contends that such disclaimers have the effect of shifting the risk of any mistake in the estimates to plaintiff so there cannot be any recovery on a mutual mistake theory either. Plaintiff takes the position that the disclaimers are effective only to indicate that the quantity estimates are not 100-percent accurate. However, plaintiff argues, the existence of quantity estimates in the contract constitutes an implied warranty that such estimates are accurate within a reasonable degree of error, and the parties contracted on the assumption that the quantity estimates were reasonably accurate. Thus, both counts ultimately turn on the proper interpretation of the contract terms, particularly provision A2, which contains the quantity estimates, and B2.4, which contains the above-quoted disclaimer of the estimates. On the papers before us, both parties’ interpretations of the contract are plausible and an ambiguity exists. Extrinsic evidence should therefore be considered to determine precisely the basis of the bargain between the parties. 4 WILLISTON § 600A (3d ed. 1961). As the parties dispute most of the extrinsic facts the motions for summary judgment must be denied and the case remanded to the trial division. Ct. Cl. Rule 101(d).
However, since it may be helpful to the parties and the trial judge, we will discuss a few of the problems we have with the parties’ present positions. Plaintiffs motion for summary judgment must be denied because even if we adopted its interpretation of the contract, a disputed issue of fact would remain as to whether the Forest Service’s estimates were reasonably accurate or not. However, we are not prepared to adopt plaintiffs interpretation at this point in any event, largely because the disclaimer language in the prospectus and contract weighs heavily against it. We also note that plaintiff has tried to impress us with the harsh result of defendant’s intrepretation that occurs to buyers in *744 those instances where the Forest Service grossly overestimates the amount of merchantable timber available. However, the court must bear in mind in any interpretation of the disclaimer in the standard B2.4 clause that in the next case the Forest Service may grossly underestimate the amount of timber available. In that case, the interpretation defendant now urges may be a great boon to buyers since the contract would in no way limit the amount of timber the buyers could take.
Defendant’s motion must be denied because we are not willing to say, given what information we have presently before us, that defendant’s interpretation of the contract is correct as a matter of law. Defendant’s position is that any warranty as to the quantity estimates is fully disclaimed and therefore they are essentially meaningless surplusage. There are a number of difficulties with defendant’s position at present, some of which are discussed below.
First, there is the court’s recent decision in Timber Investors, Inc. v. United States, 218 Ct. Cl. 408, 587 F.2d 472 (1978). That case also involved a timber sale by the Forest Service. The contract and related documents also contained estimates of certain road construction work and disclaimers of the estimates. Under the circumstances of that case, the court held that the disclaimers, standing alone, were insufficient to insulate the Government from liability if its estimates were "so grossly erroneous as to indicate a failure to exercise reasonable care and diligence in arriving at said estimates.” 218 Ct. Cl. at 415 n.4, 587 F.2d at 475-76 n.4. Once the facts are resolved in this case, they may show that the instant contract is governed by the principles of the Timber Investors case.
Second, plaintiff cites a provision of the Forest Service Manual which states: "determination of timber volumes to be cut from the sale area will be carefully made, since a prospective purchaser should reasonably expect to base his operating plans and cost estimates on such figures.” Forest Service Manual § 2431.23. This might be taken as an indication of the Forest Service’s intent with regard to the inclusion of quantity estimates in the contract. This indication would seem to contradict defendant’s present position that the estimates are entirely meaningless surplusage.
*745 We also find difficult to accept in itself the view that quantity estimates which are incorporated in a contract are totally meaningless. That contravenes the established canon of construction that, preferably, contracts are to be contrued in a way so as to give meaning to all their provisions. Monroe M. Tapper & Assoc. v. United States, 221 Ct. Cl. 27, 34, 602 F.2d 311, 315 (1979); Thanet Corp. v. United States, 219 Ct. Cl. 75, 82, 591 F.2d 629, 633 (1979); Bradley v. United States, 213 Ct. Cl. 745, 746-47 (1977); ITT Arctic Services, Inc. v. United States, 207 Ct. Cl. 743, 751-52, 524 F.2d 680, 684 (1975); Hol-Gar Mfg. Corp. v. United States, 169 Ct. Cl. 384, 395, 351 F.2d 972, 979 (1965); 4 Williston § 620 (3d ed. 1961); Restatement of Contracts § 236(a) (1932). Defendant argues that the estimates were supplied only "for what they were worth,” and to avoid a possible charge that the Government concealed superior knowledge of the subject matter. If that is so, we can well understand why the quantity estimates were supplied to bidders in the pre-award documents, but there would seem to be no reason to then incorporate the figures in the contract.
We also have some difficulties with defendant’s arguments based on the various disclaimers. First, the language defendant relies on most heavily is in the prospectus and is not even a part of the contract. Second, the disclaimer that is in the contract, which says that the estimated volumes are not "guarantees or limitations,” is in small print at the end of a paragraph dealing with instances where there are post-award designations of timber to be cut in an attempt to match the estimated volumes by species or species group stated in A2. We doubt, though need not now decide, that such language, standing alone, would be sufficient to bind buyers to quantity estimate terms which are grossly erroneous. Furthermore, plaintiff claims that bidders were not given enough time to make detailed reliable estimates of the available timber on their own. While this is a disputed issue of fact, if plaintiff is correct, it may be that plaintiff can show it had a right to rely on the Government’s estimates. See Schutt Constr. Co. v. United States, 173 Ct. Cl. 836, 353 F.2d 1018 (1965) (Congressional Reference case). The answer to this argument may be *746 simply that if plaintiff felt it did not have enough time to make reliable estimates on its own, it should not have bid. However, the lack of time may also be an indication that the Forest Service’s intent was that bidders were to rely on the quantity estimates, at least to some extent. In any event, it is premature to decide if plaintiff had enough time for a site inspection or effectively used the time it did have. Since these are disputed fact issues, summary judgment on the present record is inappropriate now.
It is important to note that it is possible for the Forest Service to contract in such a way that its quantity estimates are entirely meaningless and the risk of even gross negligence on the Forest Service’s part in preparing the estimates is shifted to the buyers. See Rixon Electronics, Inc. v. United States, 210 Ct. Cl. 309, 536 F.2d 1345 (1976). However, that seems rather unusual and runs counter to the normal rule that contracts should be given fair and equitable interpretations. ITT Arctic Services, Inc. v. United States, supra; 4 Williston § 620 (3d ed. 1961); Restatement Of Contracts § 236 (1932). Hence, we would require very strong and clear language in the contract before we would be willing to conclude, based on contract language standing alone, that the parties have included quantity estimates in the contract when they intend those quantities to be meaningless, as defendant urges in its caveat emptor approach to this case.
Perhaps what troubles us most about deciding the question of contract interpretation at this point is our ignorance of industry practice, if indeed there is any such practice. Our view of the proper interpretation of this contract with its quantity estimates and disclaimers thereof would be considerably affected were we to know either that industry practice is to rely on Forest Service or seller estimates within a reasonable degree of error, or if, on the contrary, industry practice was that the existence of disclaimers such as were used here made it incumbent on buyers to rely only on estimates they themselves make. See Alfred A. Altimont, Inc. v. United States, 217 Ct. Cl. 628, 632-33, 579 F.2d 622, 625 (1978); Gholson, Byars & Holmes Constr. Co. v. United States, 173 Ct. Cl. 374, 395, 351 F.2d 987, 999 (1965). We also acknowledge, however, that it may *747 be that an entire industry engages in unreasonable practices. See 5 Williston § 659 (3d ed. 1961).
We reiterate that the above discussion does not cover all the arguments that can be or have been made on this contract interpretation issue and we in no way mean to limit the arguments the parties may make on remand. The parties may renew all their arguments after appropriate proceedings have been completed in the trial division. We do not pass on either interpretation argued for by the parties nor even whether the above-mentioned interpretations are the only ones possible. We deny the cross-motions for summary judgment because of disputed material facts.
On remand, the trier may need to consider, inter alia, such issues as the following:
(1) Is there an industry practice regarding the interpretation of quantity estimates and disclaimers thereof? Is it a reasonable practice?
(2) Is there an industry practice with regard to purchasers making their own estimates?
(3) Was there enough time for plaintiff to make its own estimates of the available timber or to detect error in the Forest Service’s estimates and would it have been commercially feasible for plaintiff to do so?
(4) To what extent did plaintiff in fact rely on defendant’s estimates?
(5) Did plaintiff seek information from Forest Service offices as invited to do by the prospectus?
(6) If plaintiffs interpretation is upheld, were the Forest Service’s estimates reasonably accurate and made with reasonable care and diligence, considering industry standards?
Of course, other issues may arise depending on the resolution of the contract interpretation question, and we do not mean to restrict the scope of the proceedings below.
it is therefore ordered that the motion to amend the petition is granted.
it is further ordered that the parties’ motions for summary judgment are denied without prejudice and the case is remanded to the trial division for trial or other appropriate disposition in conformance with this order.