This government contract case is before us on cross-motions for summary judgment to review a decision by the Armed Service Board of Contract Appeals (the board) denying plaintiff all relief. Del E. Webb Corp., ASBCA No. 22386, 79-2 BCA ¶ 14,140 (October 17, 1979). We hold plaintiff is not entitled to relief.
The pertinent facts as found by the board are that, following formal advertising, plaintiff was awarded contract No. DACA84-76-C-0073 on December 31,1975, by the Army Corps of Engineers. This was a $45 million firm fixed-price contract for the construction of 1,347 family housing units for military personnel and related work at the Aliamanu Military Reservation, Oahu, Hawaii. The buildings were to be constructed in the crater of an extinct volcano. For aesthetic, temperature control, and other reasons, the color scheme of the development was an exceptionally important part of the project. In particular, the contract drawings called for five different colors for roof shingles and indicated the color for each building. The specifications, however, had no indication of the color scheme. Rather, there was a provision therein describing the requirements for the roof shingles, the last sentence of which read: "Colors for shingles shall be selected from the manufacturer’s standard color range.” The crux of the case is a contract interpretation question arising from a reading of the specification on roof shingles and the drawings relating to roof shingle colors.
Plaintiffs roofing subcontractor, Federal Roofing, in essence ignored the color requirements of the drawings and relied entirely on the specification. It then contracted with a manufacturer, Qwens-Corning Fiberglass Corporation, to supply Federal with all the shingles, for the job. Federal Roofing assumed that by virtue of the specification, the Government was required to accept Owens-Corning’s "standard color range” of shingles, regardless of whether or not those colors matched the colors required by the drawings. As it turned out, Owens-Coming’s standard color range only provided for two of the five colors required by the drawings. The Government, initially rejected the Owens- *675 Corning shingles. However, it eventually became concerned about delays in the project and decided to accept them even though they were nonconforming. In the interim, transportation costs had increased. Plaintiff claimed additional compensation for such increase, asserting extra costs were incurred due to delay from the Government’s allegedly wrongful rejection of the shingles when they were first offered. The contracting officer denied the claim on August 26,1977, and plaintiff timely appealed to the board.
Plaintiff made a number of arguments before the board as to why the Government’s action was wrongful. For instance, plaintiff argued that it was entitled to rely only on the specification. It also contended that since General Provision 2 of the contract resolved differences between drawings and specifications in favor of the specifications, the specification controlled since it was in conflict with the drawings. The board rejected all of plaintiffs arguments and denied relief. The heart of the board’s opinion is that the law of contract interpretation requires that a contract be construed, if possible, in such a way as to give meaning to all parts of the contract and not to leave any part meaningless. It concluded that plaintiffs interpretation, that the Government was bound to accept Owens-Corning’s standard colors regardless of whether or not they conformed to the color requirements of the drawings, would leave the drawings meaningless. The board then properly held that such was an impermissible result. Monroe M. Tapper & Assoc. v. United States, 221 Ct. Cl. 27, 34, 602 F.2d 311, 315 (1979); ITT Arctic Services, Inc. v. United States, 207 Ct. Cl. 743, 751-52, 524 F.2d 680, 684 (1975); Hol-Gar Mfg. Corp. v. United States, 169 Ct. Cl. 384, 395, 351 F.2d 972, 979 (1965).
Plaintiffs principal contention before us is that the board has erred on this very same ground since it fails to give any meaning to the specification: "Colors for shingles shall be selected from the Manufacturer’s standard color range.” We disagree. The specification and drawings may be read together harmoniously to provide that colors for shingles shall be selected from the manufacturer’s standard color range so long as they include the colors required by the drawings. The board’s opinion indicates that at least one *676 other manufacturer had all the required colors available in its standard color range and another had four of the five colors available in its standard color range. Two other contractors also constructing housing units on the same project used the latter manufacturer and the Government accepted the four colors instead of five. Plaintiff simply chose the wrong manufacturer or failed to utilize more than one manufacturer. If the evidence showed that the required colors were not available in any standard color range or combination of ranges, then there would be a conflict between the specification and the drawings and that would be another case. That is not what happened here. In short, we hold that there was no conflict between the specification and the drawings, that the board’s interpretation of the contract did not leave the specification meaningless, and that plaintiffs interpretation was unreasonable.
Plaintiff makes a number of other arguments but these were made at the administrative level and thoroughly and properly disposed of in a careful opinion by the board. We will not reiterate the resolution of those issues here. We hold the board’s decision was not arbitrary, capricious, unsupported by substantial evidence or incorrect on a matter of law, and so it must be upheld under the standards of the Wunderlich Act, 41 U.S.C. §§ 321, 322 (1976). Laka Tool & Stamping Co. v. United States, ante at 83, 639 F.2d 738 (1980), cert. denied, 454 U.S. 1086 (1981); Foster Wheeler Corp. v. United States, 206 Ct. Cl. 533, 544, 513 F.2d 588, 593-94 (1975); Koppers Co. v. United States, 186 Ct. Cl. 142, 147, 405 F.2d 554, 557 (1968).
Accordingly, it is ordered, upon consideration of the motions and briefs, without oral argument, that plaintiffs motion for summary judgment is denied. Defendant’s cross-motion for summary judgment is granted. The petition is dismissed.